(114 So. 280)

**CAUGHLAN v. STATE.   (7 Div. 361.)**

Court of Appeals of Alabama.   Nov. 1, 1927.

Harrison & Stringer, of Talladega, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

Brief did not reach the Reporter.

SAMFORD, J. The indictment under which defendant was convicted is as follows:·

"The grand jury of said county charge that before the finding of this indictment, John H. Caughlan, whose true name is to the grand jury otherwise unknown, with intent to defraud, did make, draw, utter, or deliver a check or draft · in favor of R. B. Burns on the Bank & Trust Company of Talladega, a corporation, which check or draft is in words and figures as follows: 'Talladega, Alabama. 11/26/24. No. ——. Bank & Trust Co. of Talladega. Pay to the order of R. B. Burns $1,513.74—fifteen hundred thirteen 74/100 dollars. J. H. Caughlan,' and the grand jury avers that said John H. Caughlan, by means of said making, drawing, uttering, or delivery of said check or draft, did obtain from the said R. B. Burns property a thing of value, to wit, thirteen bales of cotton, the personal property of said R. B. Burns, of the value of, to wit, $1,513.74, and the grand jury avers that, at the time of the making, drawing, uttering, or delivery of said check or draft, the said John H. Caughlan knew that he did not have sufficient funds in or credit with said Bank & Trust Company of Talladega for the payment in full of said check or draft upon its · due presentation, contrary to law, and since August 17, 1924, against the peace and dignity of the state of Alabama."

This indictment was demurred to on many grounds raising separate questions which will be passed upon in a general discussion of the whole indictment.

Conceding the logic of appellant in his argument respecting the constitutionality of section 4159 of the Code of 1923, we are constrained to hold with the expression of the Supreme Court in Goolsby's Case, 213 Ala. 351, 104 So. 901, although it may be dicta, that "sections 4159 and 4160 of the Code of 1923, providing punishment for fraud or misrepresentations which amount to false pretense in the matter indicated," are valid, and not in violation of either the state or federal Constitution. It may be added that the statute as it now appears fixes a crime and imposes a penalty for the perpetration of a fraud by and on account of the false representation of an existing fact.

It is next insisted that in the indictment there is no allegation to the effect that John H. Caughlan and J. H. Caughlan are one and the same person. With this we cannot agree. It is charged in the indictment that John H. made the check, which is copied in the indictment together with the signature which is J. H. No one can doubt from a reading of the indictment that John H. and J. H. are one and the same; the John H. being the name and J. H. the initials, and it being charged specifically that John H. made the check signed J. H.

There is no merit in the objection that in the body of the indictment the grand jury "avers" certain facts. The charge of fraud is upon all the facts averred or alleged in the indictment.

There is no merit in the objection that the indictment fails to allege a nonpayment of the check upon presentation. As· has already been seen, the crime fixed by the Legislature is the obtaining of certain property by fraud by the giving of a check, etc., knowing at the time of such making, etc., that the maker or drawer has not (presently) sufficient funds in the depository or credit therewith for the payment of such check upon its due presentation. If he has sufficient funds or credit, at the time of making and delivering the check, no crime is committed, and no conviction can be had. It is the status at the time of the transaction which is the subject of inquiry, and that fixes the crime. The payment or nonpayment of the check upon due presentation is evidence, but is not the subject of averment.

The allegation that the crime was committed since August 17, 1924, was not necessary, but did not invalidate the indictment.

The use of initials instead of the Christian name of the person from whom goods, etc., had been obtained in an indictment charging a violation of the bad check law, does not render the indictment subject to demurrer. Jones v. State, 181 Ala. 63, 61 So. 434.

It makes no difference whether the check was ever presented for payment or not. The crime was and is not dependent upon the presentation of the check. Of course, if the check was presented and promptly paid, that fact would be a complete defense. If it was presented and not paid, the question would then be open to inquiry as to whether the drawer had with the depository either sufficient funds or credit to have paid the check.

The other objections to the indictment are without merit, and the demurrer was properly overruled.

The cause went to trial upon a copy of the indictment, as is provided by section 4553 of the Code of 1923, and objection is made that the order of the court contains the statement: "It appearing to the court," when it should say: "It was shown to the court." We think the insistence is without merit. All that is required by the statute is that the loss of the original indictment be made known to the court by statement of the clerk or other officer having had its custody.

It was claimed by the state that the check involved in this prosecution had been lost or destroyed, and, without objection or exception on the part of defendant, the state made secondary proof of its contents. The defendant cannot now on appeal put the trial court in error for admitting secondary evidence of the check without a sufficient predicate showing its loss having been proven.

The solicitor (Sanford), after qualifying as to his knowledge of the signature of R. B. Burns, the person to whom the check was made payable, was asked whether or not Burns' signature was on the back of the check. Objection was made and exception reserved. This merely tended to identify the check, which, not being denied, rendered the answer immaterial, but, if error, was without any possible injury.

Counsel insist that the court committed error in allowing the witness Lanier to testify: "In my judgment it was, the whole file." The court made no such ruling as insisted on by counsel. The answer was excluded on defendant's motion.

The court permitted the state, over the objections of defendant, to ask defendant, while he was testifying as a witness, a series of questions tending to show the giving of other checks to other parties about the same date as the check here involved. The court, upon objection being made, informed the defendant that he could decline to answer the questions, if he wished. It is insisted that the asking of the questions so prejudiced the defendant's case as to entitle him to a reversal. We do not think so. This prosecution involves a charge of fraud, and the guilt or innocence of the defendant depends upon the intent at the time the check was given. It has been many times held that proof of similar transactions occurring about the time of the alleged crime are admissible as tending to prove intent. Gardner v. State, 17 Ala. App. 589, 87 So. 885; Kirby v. State, 17 Ala. App. 151, 82 So. 641; Martin v. State, 17 Ala. App. 73, 81 So. 851. The evidence sought being legal, and the defendant having waived his immunity, it was not error to overrule the objections to the various questions tending to prove that about the time as charged in this indictment defendant gave to other parties worthless checks in the buying of other cotton.

Counsel seem to lay unusal stress upon the rulings of the court permitting evidence tending to prove that the various checks were unpaid. If the checks had been paid upon presentation, or, having been refused payment by the bank, if defendant had

immediately paid them, this evidence would have had strong weight with the jury as tending to rebut any fraudulent intent in giving the checks. If they were not paid, such fact would be a circumstance to be considered by the jury along with all the other evidence in the case as tending to prove the intent to defraud. We recognize the insistence made by defendant's counsel that the nonpayment of the check, or checks, is not an ingredient of the offense charged. The charge embraces the giving of the check, the obtaining of the cotton by reason thereof, and the fraudulent intent, and the fact of payment or nonpayment is evidence to be considered by the jury.

It is next insisted that the charge in the indictment is that the defendant received or obtained from Mr. Burns 13 bales of cotton, when in fact the evidence shows that defendant only received receipts issued by a warehouse calling for 13 bales of cotton; that therefore there is a variance entitling defendant to the affirmative charge. To sustain this we are cited the case of Pollock v. State, 19 Ala. App. 156, 97 So. 237. In that case, as in Hendrix v. State, 17 Ala. App. 116, 82 So. 564, the decision rested upon the fact that the note in the one case and the check in the other were choses in action, and subject to be discharged by the payment of a sum of money, the identity of the money not being preserved. In this case we are dealing with warehouse receipts calling for, and requiring delivery of, specific cotton. The custom of handling cotton in this country is too well known to admit of any uncertainty. The cotton is taken to a warehouse, where it is weighed and stored. The warehouse man issues his receipts, and delivers them to the depositor, the title to the cotton passes to the purchaser with the receipt, and the purchaser accepts the receipt subject to the warehouse charges. When Burns delivered to the defendant the warehouse receipts for thirteen bales of cotton, to all intents and purposes such was a delivery of the cotton. 12 Mich. Dig. 863, §§ 6(1), 6(2).

It is further contended that, as Burns was acting as agent for defendant in the purchase of the thirteen bales of cotton here in question, the title to the cotton was already in defendant at the time defendant gave the check to Burns, and that therefore defendant could not be guilty of obtaining the cotton. Not so. Burns had the cotton, with a lien for the money paid for the cotton, plus his 50 cents commission. In this prosecution it makes no difference where the naked legal title lay. Until he paid Burns, defendant had no right to the possession.

As we view this case, it is of no moment whether the warehouse receipts were negotiable or not. The receipts stand in place of the cotton, and the cotton must be delivered for them when the holder complies with section 10512 of the Code of 1923.

The foregoing passes upon and reviews the questions urged by counsel for defendant in their brief. However, this court, as is required by law sitting en banc, has given careful consideration to the whole evidence, as shown by this record, and has reached the conclusion that there is an entire absence of any evidence authorizing the jury to infer an intent to defraud on the part of defendant at the time he gave the check to Burns. The evidence discloses, without conflict, that the check here involved and charged to have been fraudulently given was one of a series of checks given by defendant to Burns covering dealings between the parties in the buying and selling of cotton at Lincoln, Ala.; that all of these checks were on the same bank, and the cotton purchased had all, including the cotton for which this last check had been given, been turned over to the bank; and that defendant never received or tried to receive one single dollar. A verdict of guilt under such circumstances would be wrong and unjust. The court should have given the general affirmative charge as requested by defendant.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.