Chester McKINZIE, Appellant,

v.

O. B. ELLIS, Director, Texas Department of Corrections, Appellee.

No. 18551.

United States Court of Appeals Fifth Circuit.

Feb. 23, 1961.

Sam S. Minter, Houston, Tex., for appellant.

J. G. Davis, Huntsville, Tex., for appellee.

Before RIVES and WISDOM, Circuit Judges, and DAWKINS, Jr., District Judge.

RIVES, Circuit Judge.

On February 24, 1953, Chester McKinzie was indicted in Dallas County, Texas, for the crime of robbery by firearms, a capital felony.[1] Two days later A. A. McDaniel was appointed by the Texas court to represent McKinzie. At that time, and at all times material to this case, McDaniel was not a member of the Bar of the State of Texas, having been dropped from the rolls for nonpayment of dues. The cause came on to be heard on March 18, 1953. The trial docket reveals that both sides announced ready. Thereafter, the district attorney moved to strike that portion of the indictment which charged that the robbery was committed by the use and exhibition of firearms. The effect of this motion was to reduce the offense with which McKinzie was charged to robbery by assault, a noncapital felony.[2] The jury was then selected and the trial began. The defendant entered a plea of guilty before the jury and the jury fixed his sentence at 25 years confinement in the state penitentiary.

McKinzie here seeks to test by writ of habeas corpus the constitutionality of his confinement.[3] His sole allegation is that the appointment of McDaniel to

1. Vernon's Texas Penal Code, art. 1408.

2. See note 1, *supra*.

3. Prior to his seeking federal habeas corpus, petitioner exhausted his remedies in the state courts. His two applications to the Texas Court of Criminal Appeals for habeas corpus were denied. Ex Parte Chester Lee McKinzie, June 12, 1958; Ex Parte Chester Lee McKinzie, App. No. 452, June 19, 1959. The

represent him was insufficient compliance with the Fourteenth Amendment's "due process" requirement and, thus, the sentence under which he is presently confined is invalid.

At the outset, we have a dispute over whether we deal here with a capital or a noncapital case. The State vigorously argues that this is a noncapital case. Its argument was accepted in the State court and in the federal district court. In denying McKinzie's petition for habeas corpus, the State court noted, "though petitioner was charged with a capital offense, he was tried for a noncapital felony," and concluded he had no right to have counsel appointed absent a showing of prejudice. The court below took much the same view. "Though counsel was appointed while petitioner was charged with a capital felony and advised him to plead guilty to a lesser offense, no statutory obligation to appoint counsel ever arose, since petitioner never stated his plea on a capital charge. * * * In the present case there was no strict requirement for the Texas court to appoint counsel under the Fourteenth Amendment, since petitioner was never arraigned or required to state his plea on a capital charge. * * * In the present case petitioner has failed to show that grave injustice resulted from the appointment of McDaniel and that he was denied a fair and adequate trial. It is true that petitioner was charged with a capital felony when McDaniel was appointed his counsel, yet the Texas court was not obligated to appoint counsel until arraignment. Because of the dismissal of the firearms allegation, petitioner was not charged with a capital felony when arraigned, and no obligation to appoint counsel ever arose."[4] We take a slightly different view of the case.

Until the time that the "firearms" allegation was struck from the indictment, Chester McKinzie stood charged with a capital crime. As one so charged, he was constitutionally entitled to the assistance of counsel not only at his forthcoming trial, but at such time prior to trial as was necessary for adequate preparation of his defense.[5] In this case, we think petitioner had a right to the assistance of counsel at the time the defense strategy was evolved. That strategy was to plead guilty to the lesser offense, and it was evolved at a time when McKinzie was still charged with a capital crime. We think that A. A. McDaniel was not such counsel as the Constitution required to be appointed to assist McKinzie.

The Texas State Bar Act, Section 3,[6] provides:

"All persons who are now or who shall hereafter be licensed to practice law in this State shall constitute and be members of the State Bar, and shall be subject to the provisions hereof and the rules adopted by the Supreme Court of Texas; and all persons not members of the State Bar are hereby prohibited from practicing law in this State."

Article IV, Section 5,[7] of the rules promulgated by the Supreme Court of Texas, reads as follows:

"A member in default of payment of the fee for sixty days after it is due shall be regarded as delinquent and shall be given written notice thereof by the Clerk of the Supreme Court. If the delinquent member fails to pay such fee within thirty days thereafter, he shall cease to be a member, but shall be reinstated upon payment of the fees due at the

United States Supreme Court denied certiorari. McKinzie v. Texas, 1959, 361 U.S. 869, 80 S.Ct. 130, 4 L.Ed.2d 108.

4. McKinzie v. Ellis, D.C.S.D.Tex.1960, 185 F.Supp. 931, 935, 937, 938.

5. Powell v. State of Alabama, 1932, 287 U.S. 45, at page 71, 53 S.Ct. 55, at page 65, 77 L.Ed. 158.

6. Vernon's Ann.Civ.St. art. 320a–1.

7. Vernon's Ann.Civ.St. following article 320a–1.

time he ceased to be a member, together with fees for the current year and for any intervening fiscal years during which he has practiced law in the State of Texas. If at the end of ninety days after June 1, a member has not paid to the Clerk membership dues for the current year, the Clerk shall strike from the rolls of the State Bar the name of the delinquent member.

"Any County or District Judge, or any Judge of any Appellate Court of this State, shall have the right, and it shall be his duty to refuse any person the privilege of practicing in such court, unless such person is currently a member of the State Bar of Texas in good standing. Any lawyer in this State whose name has been stricken from the rolls of the State Bar for non-payment of dues, and who has not been reinstated, shall not be permitted to practice law in this State, and if such lawyer does engage in the practice of law, such continued practice of law by such delinquent member shall constitute the unauthorized practice of law on the part of such person, and he may be enjoined by any court of competent jurisdiction."

The record in this case establishes that A. A. McDaniel did not pay his membership fees to the State Bar of Texas for the years 1951, 1952, and 1953 until September 1953, six months after the trial of Chester McKinzie. There is no dispute that, at all times material hereto, McDaniel had been dropped from the rolls of the Texas State Bar and, by virtue of that fact and the State Bar Act, he was "prohibited from practicing law in this State."

We think that where due process requires that a defendant be represented by counsel, counsel so appointed must be authorized to practice in the court where the trial will occur. A. A. McDaniel was not so authorized.

The State would argue that dropping a man from the rolls of the State Bar for nonpayment of dues is a sanction to enforce a mere revenue-raising measure and " * * * his delinquency in the payment of his bar dues in no wise detracted from or affected his representation of his client." [8] While it is true that some licensing statutes are solely revenue-raising measures,[9] the Texas State Bar Act and the rules promulgated thereunder [10] are a comprehensive code designed to regulate the practice of law "so that the public welfare will be served and promoted."[11] As to the dues requirement in particular, it would not be unreasonable to assume that one of its purposes was to eliminate those who, though trained in law, were not interested in practicing the profession. Many graduates of law school never embark on the practice of law, and many who do eventually gravitate to other callings. A dues-paying requirement would certainly cull some of these from the ranks of the legal profession. Thus, while one purpose of the dues requirement was certainly the raising of revenue, we cannot say that that was its only, or even its primary, purpose. We, therefore, decline to go behind the State Bar Act and speculate on the policies underlying the grounds for disqualification to practice law in Texas. Texas has decided that A. A. McDaniel was unqualified to represent litigants in the courts of that State. We accept that conclusion. We note in this regard that the Court of Criminal Appeals of Texas, in Martinez v. State, Tex. Cr.App.1958, 318 S.W.2d 66, has determined that the appointment of an attorney who was dropped from membership

8. See Martinez v. State, Tex.Cr.App.1958, 318 S.W.2d 66, 71 (dissenting opinion).

9. See 33 Am.Jur., Licenses, § 7, p. 330 (1941); 53 C.J.S. Licenses § 4, p. 461 (1948).

10. Vernon's Ann.Civ.St. art. 302a–1.

11. See Hughes v. Fort Worth Nat. Bank, Tex.Civ.App.1942, 164 S.W.2d 231, 234.

in the State Bar for non-payment of dues does not satisfy its "right to counsel statute," which provides:

"When the accused is brought into court for the purpose of being arraigned, if it appears that he has no counsel and is too poor to employ counsel, the court shall appoint one (1) or more practicing attorneys to defend him." [12]

While the statute explicitly provides for the appointment of "practicing" attorneys, we think the United States Constitution requires no less.[13]

McKinzie's testimony,[14] which was corroborated,[15] adequately supports the finding of the district court that McDaniel "advised him to plead guilty to a lesser offense * * *."[16] Where a petitioner can show that his plea of guilty and subsequent conviction flow from the advice, given while the petitioner was charged with a capital offense, of court-appointed counsel who was not qualified to practice law in the state where the proceedings took place, a due process violation has been established.[17]

The judgment is accordingly reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

12. Vernon's Texas Code Cr.Proc. art. 494.

13. The State vigorously argues that the author of the Martinez opinion held that case inapplicable to McKinzie on McKinzie's petition for habeas corpus in the State court. It appears from the memorandum opinion issued that Martinez was held inapplicable because the McKinzie case was not considered a capital one, and, therefore, the conclusion was that McKinzie had no right to have counsel appointed absent a showing of prejudice. Ex Parte Chester Lee McKinzie, App. No. 452, Tex.Crim.App., June 19, 1959.

14. "Q. On the day of your trial did Adrian A. McDaniel advise you as to procedure and what you should do? A. Yes, sir; he did.
"Q. Did he advise you as to whether you should plead guilty or not guilty? A. Yes, sir.

"Q. What did he advise you in that respect? A. He advised me that the offense I was then indicted on carried from five years to the electric chair.
"The Court: I didn't understand you.
"The Witness: He advised me there in the court that the offense I was indicted on at the present time then carried from five years to the electric chair and if I would plead guilty to robbery by assault I probably wouldn't get over five to ten years."

15. "A. [Mr. Davis, a witness] (continuing) I was sitting about as far as from this lady here from Chester McKinzie when Mr. McDaniel was talking to him and Mr. McDaniel advised him to plead guilty or that the jury or judge could give him the electric chair."

16. 185 F.Supp. at page 935.

17. Williams v. Kaiser, 1945, 323 U.S. 471, 475–476, 65 S.Ct. 363, 89 L.Ed. 398.