Chief Judge Desmond.
These three defendants, all under 21 years of age, were, so it is charged, surprised in an orchard at about 10:30 p.m. in the act of stealing a half bushel of apples “of the value”, according to the information filed by the owner of the orchard, of about $2. Sometime after midnight the three were brought before a Justice of the Peace. After brief proceedings at which none of them was represented by any attorney all of them pleaded guilty. None of them had been convicted before. Each was sentenced to. imprisonment for 30 days plus a fine of $25 which meant (since none of them had money to pay the fine) a sentence of 55 days’ imprisonment for each. All were taken to jail to serve their sentences. Later they retained a lawyer who took an appeal to the County Court which rejected all their contentions except as to excessiveness of sentence. The County Court modified the judgments of conviction by reducing the terms of imprisonment “ to the time already served ” which was about 7 days.
Each defendant asserts that in the proceedings before the Justice he was deprived of his constitutional and statutory right to counsel. In response, the People cite the trial court’s docket entry which in pertinent part says this as to each defendant:
“ Defendant brought into court, informed of the charge against him and immediately instructed as follows:
“ ‘ You are entitled to the aid of counsel in every .stage of these proceedings, and before any further proceedings are had. You are entitled to an adjournment for that purpose and upon your request I will send a message to any counsel you name within this jurisdiction. Do you desire counsel? ’ Defendant answered, ‘ no
Nothing was .said or suggested by the court to inform these youths that, if they had no money to pay attorneys, the court would assign attorneys to defend them. What the court told them about sending “ a message to any counsel you name within this jurisdiction ’ ’ had no tendency to alert the defendants to the availability of court-assigned lawyers. On the contrary, the court’s quoted .statement necessarily referred to the possibility that defendants themselves knew of and had access to *395 available lawyers “within this jurisdiction”. The bare statement to an ignorant teenager that he is " entitled to the aid of counsel in every stage ” plus an offer to send a message to a lawyer to be named by the defendant, followed by the defendant’s negative answer to a question as to whether he desired counsel, did not show an effective waiver by the defendant of his right to counsel. The condition and position of these young defendants at this nocturnal court session " ‘ creates an inference of fact ’ ’ ’ that the waiver, if waiver it was, ‘ ‘ ‘ was not intelligent ’ ” (People v. Amos, 21 A D 2d 80, 83, citing Williams v. Huff, 146 F. 2d 867, 868). As we said in the well-known Matter of Bojinoff v. People (299 N. Y. 145, 151-152): “It is also well established that waiver of such statutory and constitutional rights is occasioned only when the accused acts understandingly, competently and intelligently
It is too late to argue in this court against the fundamental right of a defendant to counsel (People v. McLaughlin, 291 N. Y. 480) or to argue that this right is not available in Special Sessions Courts (People v. Marincic, 2 N Y 2d 181). Marincic (involving petit larceny guilty pleas by young girls in a local court) emphasized (p. 184) that in every criminal ease, large or small, the court “must make it clear” to defendant that these rights exist and that the opportunity to have the services of counsel must be real and reasonable, not a mere formulistic recital of ‘ ‘ law language ’ ’. The law as to the right to counsel must be made “meaningful and effective ” in criminal courts on every level (see People v. Banner, 5 N Y 2d 109, 110). The cited cases do not directly hold that as to criminal charges triable in Special Sessions Courts defendants must be informed as to the availability of assigned counsel but we now hold that such information must be provided. We approve the ruling in People v. Brantle (13 A D 2d 839) where a 16-year-old defendant was told he had a right to counsel and asked “ Can you get one or do you want to proceed without one ? ’ ’ but was not asked whether he wanted counsel assigned or told that the court would do so on request. The court in Brantle pointed out that a proffer of the aid of counsel “ should be made in clear and unequivocal terms ”.
The People would read the docket entries as showing that the defendants were sufficiently notified of their rights as to *396 counsel and that they deliberately waived representations by attorneys. The entries themselves show a lack of any reference at all to the right to have counsel assigned and this, for defendants without money, is the important right. Not only the precedents, " but also reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. * * * This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him ” (Gideon v. Wainwright, 372 U. S. 335, 344).
The prosecutor reminds us that the statute applicable in Courts of Special Sessions (Code Crim. Pro., § 699) does not say that the court is required to inform a defendant on arraignment of the right to assignment of counsel, or offer to make such an assignment. Section 699 says that the Magistrate ‘ ‘ must immediately inform him of the charge against him and of his right to the aid of counsel in every stage of the proceedings, and before any further proceedings are had”, that he must allow the defendant a reasonable time to send for counsel, must adjourn the proceedings for that purpose and on request of defendant must send an officer with a message to any attorney designated by the defendant. To be sure, this language is different from that found in section 308 of the Code of Criminal Procedure which requires as to an arraignment on indictment that, if the defendant appear without counsel, “he must be asked if he desire the aid of counsel, and if he does the court must assign counsel.” The verbal differences between the two Criminal Code sections were discussed by us in People v. Marincic (2 N Y 2d 181, 184, 185, supra). We concluded that ‘ ‘ there is little real difference between the meanings of the two sections ”. This conclusion was amply justified by the 1940 Report, to which we referred in Marincic, of the Law Revision Commission (p. 95 et seq.) on whose study and recommendation present section 699 of the Code of Criminal Procedure was adopted.
In our discussions of New York statutes and of the modern constitutional constructions by the United States 'Supreme Court, we must not forget that in our State the right to counsel *397 was announced and insisted upon in much older case law. An eloquent 1885 Special Term opinion by Vann, J. (later of this court) in People ex rel. Brown v. Board of Supervisors (3 How. Prac. [N. S.] 1, 3, affd. 39 Hun 654, memorandum opn. in 4 N. Y. Crim. Rep. 102, 108, affd. on opn. below 102 N. Y. 691) sets out the historical data proving that, even “ While the territory now embraced by the State of New York was a colony of Great Britain, it was a part of the common law that counsel should be assigned by the court for the defense of poor persons accused of crime ” and that before there was any applicable statute it was the practice and the duty of the courts to make such assignments, citing an 1864 opinion in People ex rel. Hadley v. Supervisors of Albany County (28 How. Prac. 22). An old (1875) Buffalo Superior Court opinion says this: “ The right and the duty of our courts, to assign counsel for the defense of destitute persons, indicted for crime, has been, by long and uniform practice, as firmly incorporated into the law of the State, as if it were made imperative by express enactment ” (People ex rel. Saunders v. Board of Supervisors, 1 Sheld. 517, 524). Again in 1883 in the much-cited People ex rel. Burgess v. Risley (66 How. Prac. 67, 69) the court totally rejected “ a narrow interpretation of the fundamental law ” in this regard and demanded compliance with its ' spirit and great purpose. That the later-enacted statutes are mere codifications of the common law and constitutional principles was explained in People v. Molineux (168 N. Y. 264, 331).
The opinions just above cited discussed prosecutions by indictment but the “basic minimal right” to counsel (Rideau v. Louisiana, 373 U. S. 723, 726) cannot be and in this State is not restricted to prosecutions for major crimes. Just the opposite has been decided in People v. Marincic (2 N Y 2d 181, supra), People v. Banner (5 N Y 2d 109, supra), and People v. Shenandoah (9 N Y 2d 75). Shenandoah’s case was much like the present one — a teenager arrested in the wee hours and taken before a Justice of the Peace without a lawyer, with the predictable result of a confession and a guilty plea. We said (p. 77): “ This was so gross a violation of his fundamental rights as to require a reversal.” We should say no less here.
The dissenting opinion in this court suggests that a requires nt for assignment of counsel in Special Sessions Courts is *398 impracticable because the Judges would have difficulty in finding lawyers to assign. We do not think this fear well grounded. There are aborit 54,000 registered lawyers in this State, or one lawyer to every 300 inhabitants. Bach county of the State, including Rockland County where these defendants were sentenced, has a substantial number of resident attorneys and the New York State Bar Association has 96 members living in that county. In the Village of Spring Valley, where this Justice of the Peace has his office, there are 40 resident lawyers (see 1964 New York Lawyers Diary and Manual, Legal Diary Pub. Co., p. 861).
The judgments should be reversed and the informations dismissed.