203 So.2d 283

**Melvin H. IRVIN**

**v.**

**STATE.**

**8 Div. 111.**

Court of Appeals of Alabama.

Oct. 10, 1967.

Melvin H. Irvin, pro se.

MacDonald Gallion, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal was originally submitted without oral argument and was assigned to Johnson, J. A majority not concurring in his opinion affirming, the writer has submitted this opinion for the majority of the court.

February 17, 1965, Irvin was charged before a justice of the peace with obtaining "money and/or merchandise" from "John C. Hodges D B A A & P Tea Co." by making uttering or delivering a check on the First National Bank of Athens "knowing at the time * * * that he had not sufficient funds in or on deposit with said bank for the payment in full of said check."

This complaint was made returnable to the County Court of Morgan County. On August 3, 1966, Irvin filed (among others) the following written motion:

"Comes the Defendant, Melvin H. Irvin, and avers that he is without Counsel, Indigent and incompetent mentally to handle his own affairs, under thorazine drugs prescribed by a Pscychiatrist, and adjudged 100% disabled by Doctors for the Veterans Administration.

"Defendant moves this Honorable Court appoint him Counsel."

The minute entry in the Record (p. 9) shows that preceding arraignment the court overruled this motion. The court reporter shows the following pronouncement from the bench on this occasion:

" * * * All right, this motion is overruled. Number one, this is not the Morgan County Court. Now, ground one of the motion, taking them separately and severally, other than that one ruling there since the Court is not properly addressed, the Court doesn't consider the motion but if the motion were considered—motion number one, comes the defendant and moves the Court appoint adequate counsel and says he is indigent and without funds and unable to provide same and said defendant is disabled. The Court has discussed with the defendant on other occasions and been advised by the defendant that he is a graduate attorney himself although the Court is advised that he is not licensed to practice but he is a graduate attorney. The Court—from his physical appearance, he certainly doesn't appear to be disabled, from conversation he doesn't appear to be mentally disabled and as far as him being indigent, the Court has talked to him and asked him if he had a car. He said he did but aside from that, this is not such a case whereas [sic—wherein] attorneys are appointed. At any rate the Court does not consider that this is required by law to appoint one so that motion would be overruled if the Court was ruling on it."

After the State rested, the record fails to show that Irvin (1) moved to exclude the State's evidence, or (2) moved for judgment because of a variance between allegata and probata.

Indeed, the record shows the defendant threw himself upon the court for guidance:

"STATE RESTS

"DEFENSE EVIDENCE

"MR. IRVIN: Defendant would like to ask the Court to help him on criminal procedure in Alabama, may I address the Court with questions?

"THE COURT: Let's do it off the record.

"(Thereupon, there was an off the record discussion at the Bench, after which the following proceedings were had and done before the Court and the Jury.)

"MR. IRVIN: Defense calls as its first witness Robert G. Irvin.

"THE COURT: Mr. Irvin, come around please, raise your right hand.

"(Witness sworn.)"

After verdict on August 9, sentencing was continued, the record then showing:

"SEPTEMBER 2, 1966: This being the day that is set for sentencing of the defendant in this case It is considered, ordered and adjudged by the Court that defendant be and is hereby adjudged guilty in accordance with the verdict of the Jury. Defendant is ordered to pay fine of $450.00 together with $100.00 restitution to be paid to A. & P. Company. It is further ordered by the Court that the defendant is taxed with the costs of this prosecution. Upon and in event of failure to pay fine and costs defendant is sentenced to perform hard labor for Morgan County, Alabama for a term of 140 days to pay said fine and to 13 days to pay costs."

Later, upon conviction, the court found Irvin to be indigent so that his record has come here with a free transcript under Act No. 525, September 16, 1963.

I.

The sole question for decision is whether or not Irvin was charged with "a serious offense" as that expression appears in § 1 of Act No. 526, September 16, 1963. That section reads:

"Section 1. In all noncapital criminal cases wherein a defendant is charged with a serious offense in the circuit court, or court of like jurisdiction, or courts wherein the law provides a direct appeal to the Supreme Court or Court of Appeals to review such criminal proceedings, the trial judge shall before arraignment ascertain from the accused, or otherwise:

"1. Whether or not defendant has arranged to be represented by and have the assistance of counsel.

"2. Whether or not defendant desires the assistance of counsel.

"3. Whether or not defendant is able financially or otherwise to obtain the assistance of counsel."

See Martin v. State, 277 Ala. 153, 167 So. 2d 912.

The accusation against Irvin not being by way of indictment was of a misdemeanor. Const. 1901, § 8, as amended by Amendment 37; § 4, Act 566, November 19, 1959.

Act 116, June 20, 1951, repealed §§ 232, 233, and 234, T. 14, Code 1940. In place of those Code sections, Act 116 did away with "intent to defraud" in the bad check law, though the last sentence of § 2 of that Act allowed the defendant to testify as to his intent whilst drawing the check.

Act 566, supra, repealed Act 116. The present enactment restored "intent to defraud" as an element. However, Section 2 provides:

"As against the maker, or drawer thereof, the making, drawing, uttering, or delivering of a check, draft, or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or on deposit with, such bank, person, firm or corporation. Provided, proof of payment of the amount due the holder of the check, draft, or order by the drawer, within ten days after notice that such check, draft, or order was not paid by the drawee, shall be sufficient to overcome the presumption of prima facie evidence provided herein."

█ No provision in Act 566 removes the incompetency of the defendant to testify as to his contemporaneous intent on making the offending instrument. Under Goolsby v. State, 213 Ala. 351, 104 So. 901, this omission is a denial of due process. See Bailey v. State of Alabama, 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191.

█ Constitution 1901, § 6, gives the accused the "right to be heard by himself

and counsel, or either." "Counsel" in this context has well nigh uniformly been held to mean a duly licensed and qualified lawyer of the state of trial.[1] Code 1940, T. 46, § 42.

A defendant may knowingly waive this right of locally licensed counsel. Breier v. Gladden, D.C., 229 F.Supp. 823. However, where the court, under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, must appoint counsel, the appointment of an unlicensed attorney will not do. People v. Cox, 12 Ill.2d 265, 146 N.E.2d 19, 68 A.L.R.2d 1134; Martinez v. State, 167 Tex.Cr.R. 97, 318 S.W.2d 66; McKinzie v. Ellis, 5 Cir., 287 F.2d 549. See, however, Hill v. State, Tex.Cr.App., 393 S.W.2d 901, as to effect of failure to pay bar dues.

Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, overruled the special circumstance rule of Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595. In *Gideon's* case the court set aside a conviction without counsel of breaking and entering, a noncapital felony. Thus, Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, was extended.

In the summing up in the *Gideon* epitaph for Betts v. Brady, supra, we find expressions broader than mere references to felonies:

1) " * * * any person *haled into court,* who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."

2) " * * * the widespread belief that lawyers in *criminal courts* are necessities, not luxuries."

3) "This noble ideal cannot be realized if the poor man charged with *crime* has to face his accusers without a lawyer to assist him."—372 U.S. at 344, 83 S.Ct. at 796. [Italics added.]

In 1948 in Uveges v. Commonwealth of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127, Mr. Justice Reed, in a bifurcate ratio decidendi, referred to persons charged with serious crimes. Uveges was indicted for four separate burglaries. This expression "serious crimes" was quoted by Clark, J., concurring in Gideon, supra, 372 U.S. at 347, 83 S.Ct. 792.

In *Gideon,* Mr. Justice Harlan alludes to the "complexity" of legal questions in noncapital cases.

It is this background that casts some light on our Legislature's choice of words, "serious crime," rather than the more conventional terms, "felony" and "misdemeanor." So it is that here we must do more than construe *Gideon:*[2] we have the statute to interpret.

*First,* we assume, without need for deciding, that serious crimes embrace all felonies and treasons.

1. Cf. Lunce v. Overlade, 7 Cir., 244 F.2d 108, 74 A.L.R.2d 1384; United States v. Bradford, 2 Cir., 238 F.2d 395; People v. Sardo, 15 Misc.2d 69, 178 N.Y.S.2d 691; Hudspeth v. McDonald, 10 Cir., 120 F.2d 962; Abraham v. State, 228 Ind. 179, 91 N.E.2d 358.
2. Thus we lay aside the Florida and Louisiana precedents. In Fish v. State, Fla., 159 So.2d 866, the court held that Florida's Public Defender Law (c. 63–409 Laws '63) was not constitutionally defective in omitting misdemeanors and other offenses less than felonies.
   Despite McDonald v. Moore, 5 Cir., 353 F.2d 106, a habeas corpus appeal setting aside a Florida bootlegger's conviction, we find the Florida Supreme Court adhering to Fish. In re Florida Rules of Criminal Procedure, Fla., 196 So.2d 124, 142 and 143.
   Cortinez v. Flournoy, 249 La. 741, 190 So.2d 909, denied review of an uncounseled misdemeanant saying: "The application is denied. It is not our understanding that Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, applies to misdemeanor cases. Hence the trial judge correctly denied the application for habeas corpus." This view was rejected in Petition of Thomas, D.C., 261 F.Supp. 263, wherein consideration was given to the effect of the denial of certiorari in Cortinez v. Flournoy, 385 U.S. 925, 87 S.Ct. 314, 17 L.Ed.2d 222, and Winters v. Beck, 385

*Second,* we do not assume that all public offenses are, ipse dixit, serious crimes.[3]

Our Code, much as other legal authorities, uses the following system of classification found in Title 1:

"§ 5. A public offense is an act or omission forbidden by law, and punishable as provided in this Code.

"§ 6. Acts or omissions to which a pecuniary penalty is attached, recoverable by action by a person for his own use, or for the use, in whole or in part, of the state, or of a county or corporation, are not public offenses within the meaning of this Code.

"§ 7. A felony within the meaning of this Code, is a public offense which may be punished by death, or by imprisonment in the penitentiary; all other public offenses are called misdemeanors."

It will be noted that this division, much as Blackstone's contempts and high misdemeanors, iv Comm. 121, relies on the distinctions in penalties and punishment.

Code 1940, T. 15, § 325, commences:

"The only legal punishments, besides removal from office and disqualification to hold office, are fines, hard labor for the county, imprisonment in the county jail, imprisonment in the penitentiary, which includes hard labor for the state, and death by electrocution. * * *"

That section, in felony convictions where imprisonment (or hard labor) is for more than twelve months but not beyond two years, permits the judge to sentence the convict to serve either in the State penitentiary or for the county in jail or at hard labor. The proviso, "no misdemeanor prisoner may be sentenced to the penitentiary," is merely expository. Turner v. State, 39 Ala.App. 295, 98 So.2d 69.

The Code, T. 15, §§ 328–336, relates to fines and punishments. Section 339 allows confession of judgment for fine with sureties. Sections 341 and 342, as amended, monetarily commute the unpaid fine (and costs) into units of confinement or hard labor.

The determination of the need for counsel certainly can arise no later than arraignment. Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114. Thus, enquiry as to whether or not the charge is "serious" enough to afford the prisoner an opportunity for court appointed counsel, must be viewed from that point in time with regard to the potential punishment, not from hindsight after conviction. See State v. Anderson, 96 Ariz. 123, 392 P.2d 784.

Here Irvin, before trial, faced the following maximum punishments and penalties:

1. Imprisonment of one year in the Morgan County jail; and

2. A fine of $1,000.00 which, under § 341 of T. 15, was commutable under one alternative to 265 days hard labor; and

3. Up to 10 months hard labor under § 342, T. 15, as amended, for costs at the rate of $3.00 a day; and

4. A civil judgment for the amount of the worthless check.

Moreover, the crime is one involving moral turpitude. We consider Mr. Justice Traynor has analyzed this term aptly in In re Hallinan, 43 Cal.2d 243, 272 P.2d 768:

"Although the problem of defining moral turpitude is not without difficulty, * * it is settled that whatever else it may mean, it includes fraud and that a crime in which an intent to defraud is an es-

---

U.S. 907, 87 S.Ct. 207, 17 L.Ed.2d 137. See State v. Brown, 250 La. 1023, 201 So.2d 277.

**3.** New York has sought to distinguish between "traffic infractions" as minor transgressions admitting of summary dis-

position and other offenses. Compare People v. Letterio, 16 N.Y.2d 307, 266 N.Y.S.2d 368, 213 N.E.2d 670, with People v. Witenski, 15 N.Y.2d 392, 259 N.Y.S.2d 413, 207 N.E.2d 358.

sential element is a crime involving moral turpitude. * * * It is also settled that the related group of offenses involving intentional dishonesty for purposes of personal gain are crimes involving moral turpitude. * * * The fraudulent acquisition of another's property is but another form of theft in this state. * * *"

After conviction, Irvin stood to lose his credit as a witness (Code 1940, T. 7, § 434); his right to vote (T. 17, § 15); his right to have his name in the jury box (T. 30, § 21, as amended); and his right to assume or practice a learned profession could be denied (Ex parte Weinberg, 281 Ala. 200, 201 So.2d 38.)

Moreover, a pardon would not wipe out the historical fact nor remove every disqualification. Mason v. State, 39 Ala.App. 1, 103 So.2d 337; Terry v. State, 25 Ala. App. 135, 148 So. 157.

Accordingly, even if we do not rely on Gideon, we conclude the charge was one of a "serious crime" and Irvin if he was in fact then an indigent was entitled to counsel.

That he was a graduate of a law school of another state was not alone enough to obviate his need for counsel. "He who is his own lawyer has a fool for a client." Subjectivity is a quicksand in human relations.

Nor can we equate a degree from a law school as a license to practise either under the integrated bar statute or under decisions. In Opinion of the Justices, 279 Ala. 38, 181 So.2d 105, all seven justices advised the Governor that "learned in the law" required that circuit judges and solicitors "be [lawyers] admitted to practice in the state [Alabama] or entitled to be admitted without further examination."

The evidence contained a serious variance. The charge was that Irvin defrauded one Hodges D B A A & P Tea Co., whereas the State's proof showed the check was payable to "A & P" and cashed by "The Great A & P Tea Company, Inc." Moreover, the notice of the check "bouncing" was sent to "A & P Tea Co # 120."

In Clonts v. State, 42 Ala.App. 287, 161 So.2d 155, we said, per Johnson, J.:

"* * * Evidence taken at the trial of this cause proves that the ownership of the goods was vested in a corporation. When the indictment alleges the property to be owned by one party and the evidence proves the owner to be another party, there is a fatal variance between the allegations and proof."

"Inc." connotes a corporation. Thus, in Indian Refining Co. v. Royal Oil Co., 102 Cal.App. 710, 283 P. 856, we find:

"* * * it has been held that the abbreviation 'Inc.,' means 'incorporated,' and is equivalent to '(a corporation.)' Goldberg, Bowen & Co. v. Dimick, 169 Cal. 187, 146 P. 672. On the same reasoning, the words 'Indian Refining Co., Inc.,' as used in the complaint herein, are equivalent to 'Indian Refining Company (a corporation.)' * * *"

See also Brandtjen & Kluge v. Biggs, 205 Or. 473, 288 P.2d 1025, 51 A.L.R.2d 1435.

Under no tendency of the evidence could Hodges have been deemed the alter ego of The Great A & P Tea Company, Inc. Nor was there any ascertainable meaning under the evidence from the allegation that Hodges D B A (i. e., was doing business as) A & P Tea Company.

The record contains a number of written motions and pleas which the defendant filed at various times before judgment, none of which questions the constitutionality of the statute omitting the defendant's right to testify as to his contemporaneous intent. Moreover, as we have before indicated, no motion was made to exclude the State's evidence in view of the variance between pleading and proof.

The clerk of the court has not set forth either the given charges or the refused charges. However, the court reporter sets

forth, after his transcription of the evidence, one given charge and nine refused charges. See Code 1940, T. 7, § 274. No one of the charges refused to defendant comes within the definition of the affirmative charge.

We shall not list all shortcomings which might be hypothetically raised in Irvin's conduct of his own trial. No lawyer need be perfect. We merely think the Constitution would have been better served to give him a fairer trial had he been appointed a licensed lawyer.

## II.

In addition to the construction of the statutory expression "serious crime," there remains the unresolved Fourteenth Amendment question. Winters v. Beck, 385 U.S. 907, 87 S.Ct. 207, 17 L.Ed.2d 137, and Cortinez v. Flournoy, 385 U.S. 925, 87 S.Ct. 314, 17 L.Ed.2d 222, are not precedents.

Yet neither are the opinions of the Fifth Circuit the ultimae rationes of state procedure vis a vis the due process and equal protection clauses of the Fourteenth Amendment. In Minneapolis & St. L. R. Co. v. Beckwith, 129 U.S. 26, 9 S.Ct. 207, 32 L.Ed. 585, the court said the latter clause was directed against "discriminating and partial legislation * * * in favor of particular persons as against others in like condition."

In cutting off the pauper's protection, the State must mark the amputative point at a reasonable line. State v. Madison, 240 Md. 265, 213 A.2d 880. "Serious crime" carries no enacted definition. Yet we cannot legislate.

Subjectively, all consequences of criminal convictions would seem serious. Dante in his circles might afford examples.

Objectively, incarceration which would cause a reasonable employer to fire a convicted person might be viewed as "serious." Many other illustrations can be dredged from imagination and speculation, such as Freudian deprivations affecting food or family, to allude to but a few of the so-called theories behind punishment.

Besides Arkansas, Louisiana and Florida, recent decisions in this area from other states are: State v. Anderson, 96 Ariz. 123, 392 P.2d 784; Patterson v. State, 231 Md. 509, 191 A.2d 237; People v. Mallory, 378 Mich. 538, 147 N.W.2d 66; People v. Copeland, 378 Mich. 611, 147 N.W.2d 98; People v. Witenski, 15 N.Y.2d 392, 259 N.Y.S.2d 413, 207 N.E.2d 358; Hunter v. State,[4] Okl.Cr., 288 P.2d 425; State ex rel. Barth v. Burke, 24 Wis.2d 82, 128 N.W.2d 422. Also the following Federal decisions: Harvey v. State of Mississippi, 5 Cir., 340 F.2d 263; McDonald v. Moore, 5 Cir., 353 F.2d 106; Petition of Thomas, D.C., 261 F.Supp. 263; and Arbo v. Hegstrom, D.C., 261 F.Supp. 397.

Though People v. Mallory, supra, is quite roily from arguments ad homines, we quote from the opinion, Dethmers, J.:

> "There are instances in the Michigan statutory law in which offenses are named misdemeanors and for which the maximum penalty fixed exceeds $100 fine or 3 months' imprisonment or both. For example: Certain violations of rules and regulations of the public utilities commission are termed 'misdemeanors' (C.L.1948, § 460.55 [Stat.Ann. § 22.5]) and the penalties fixed at not less than $10 nor more than $1,000 or imprisonment in county jail for not more than 6 months, or both. In People v. Causley, 299 Mich. 340, 300 N.W. 111, after discussion of the distinction between felonies and misdemeanors, this Court speaks of People v. Lamb, 153 Mich. 675, 117 N.W. 539, in which, so the Court said, the crime of extortion there involved was a misdemeanor punishable by not more than one year in county jail or $250 fine or both. See, also, In re Moynahan, 255 Mich. 497, 238 N.W. 169, in which this Court refers to the offense

4. *Hunter*, a 1955 case, antedates *Gideon*, and rests only on the Oklahoma Constitution. Bolkovac v. State, 229 Ind. 294, 98 N.E.2d 250, is also an earlier case.

therein involved, possession of narcotics, as a misdemeanor punishable by imprisonment limited to one year. See, also, in that connection, Re Spencer, 252 Mich. 48, 232 N.W. 748. This gives rise to the term, used in criminal law circles, 'circuit court misdemeanors'. That is to say, the statute labels the offense a misdemeanor but, by fixing the maximum penalty, renders the offense one not cognizable by a justice of the peace and, hence, one in which the limit of his power is to bind over to circuit court. When so bound over the procedure is the same as for felonies. Defendant's need for legal assistance of counsel then may well be as great as in felony cases. The name 'felony' or 'misdemeanor' can make small difference as relates to his constitutional right to such assistance. We entertain no doubt that as to such circuit court misdemeanor cases the rule and constitutional requirements are the same as relates to felonies. To hold otherwise would mean, as said in Bolkovac v. State of Indiana, supra, that the legislature could defeat constitutional rights by the simple device of labelling offenses as misdemeanors.

"In the instant case, however, the offense was one cognizable by a justice of the peace. It might be urged that the apparent distinction made in 18 U.S.C.A., § 3006A(b), supra, between a felony or misdemeanor, on the one hand, and a 'petty offense' has application, should be adopted by this Court, and applied here. Scarcely can it be said, however, that a permissible maximum sentence of 3 months' imprisonment or $100 fine or both leaves the offense one to be regarded as so petty as not entitling the indigent accused to the assistance of counsel. His liberty is involved and in jeopardy in such case. For this the constitutional right is designed, to insure equality of treatment and chances for acquittal between the rich who can afford to hire counsel and the poor who cannot.

"In behalf of the people it is protested, however, that holding for defendant's contentions in this criminal case would result in a vast wave of pleas of not guilty in cases of clear guilt, with demands for free counsel, in traffic violations of city and village ordinances, of such proportions as to paralyze judicial proceedings in justice of the peace or magistrate courts. Note may be taken with interest, although not controlling of the case at bar, of the following: "'As before said, the violations of the village ordinances are not considered criminal offenses. People ex rel. Mixer v. Board of Supervisors, 26 Mich. 422; People v. Jackson, 8 Mich. 110 [Jackson v. People, 8 Mich. 262];' Village of Vicksburg v. Briggs, 85 Mich. 502, 508, 48 N.W. 625, 626.

"'The term "criminal cases," used in the laws, refers to none but prosecutions under the state laws. * * *'"

Also, we give the appropriate riposte from the dissenting opinion of Black, J.:

"If the purist view is to be followed, then in every prosecution for an offense upon conviction for which the accused can be jailed at all, he has a right to counsel at public expense. I see nothing more sacred about 90 days than 10 days, or one day. If, however, it be said that this is a 'practical matter' and that undiluted theory cannot obtain because the Bar simply can't furnish that many lawyers (to say nothing of reporters and yet unmentioned amount of public expenditure), then I say a misdemeanor, upon conviction for which the accused can be jailed for 90 days or more, is a most unfortunate place to draw the line of 'practicality.'"

By analogy the line could be drawn in Alabama at six months incarceration.

Code 1940, T. 37, § 586, as to the power of a recorder sitting on a case of violation of a city or town bylaw provides in part: "* * * No fine shall exceed one hundred dollars, and no sentence to imprisonment

or hard labor shall exceed six months * * *" This is the sanction specified in Code 1940, T. 37, § 455.

As to misdemeanors not otherwise penalized, Code 1940, T. 15, § 327, provides:

"§ 327. Any person who commits a public offense, which is a misdemeanor at common law or by statute, and the punishment of which is not particularly specified in this code, must, on conviction, be fined not more than five hundred dollars, and may also be imprisoned in the county jail or sentenced to hard labor for the county, for not more than six months."

We, however, do not here decide that six months imprisonment is less "serious" than 181 days durance vile. Merely, we point out that Irvin was charged under a statute which could have led to his receiving longer imprisonment, i. e., for one year as punishment and more time in default of payment of fine and costs.

We consider that Gideon v. Wainwright, supra, in principle, requires reversal here. Tucker v. State, 42 Ala.App. 174, 157 So. 2d 229.

"In view of the Patterson cases [Patterson v. State, 227 Md. 194, 175 A.2d 746; Patterson v. Warden, 372 U.S. 776, 83 S.Ct. 1103, 10 L.Ed.2d 137] we believe that Gideon requires state courts to appoint counsel for indigents accused of misdemeanor which falls in the category of a 'serious offense' and we so hold. The superior court must determine whether the misdemeanor charged is a 'serious offense' under the particular circumstances. Some of the factors to be considered in making this determination are the nature of the offense, the extent of the potential penalty, and complexity of the case. * * *"— State v. Anderson, supra, 392 P.2d at p. 790.

## III.

In conclusion, we consider that (1) court appointed counsel must be a duly licensed member of the Alabama bar; (2) and that for the offense denounced under Act 566, supra, upon proof of indigency, the trial court must appoint counsel for the defendant should he request such assistance.

We do not affirm the constitutionality of Act 566; neither do we declare that it contravenes the State Constitution. Code 1940, T. 13, § 98.

It follows that the judgment below must be reversed and the cause remanded for proceedings in accordance herewith.

Reversed and remanded.

JOHNSON, Judge (dissenting):

The State's first witness, Mr. John C. Hodges, testified that he had been Assistant Manager of the A. & P. Co., Store No. 120, located in Morgan County, Alabama for about five years; that he knew appellant; that on January 27, 1965 between 11:00 and 12:00 A.M., appellant in his presence wrote a check for $100.00 at the desk below the office window; that he (the witness) "took the check from him"; and gave appellant $100.00 in cash therefor. Mr. Hodges had initialed appellant's check, stamped the check and actually gave appellant the money, thereby presenting, on its face, sufficient implication to appellant that Mr. Hodges had the authority to act for and on behalf of the A. & P. Co. I do not agree with the majority opinion that there is a fatal variance in this case. In *Clonts*, supra, the variance occurred when the indictment alleged ownership of goods obtained by false pretense was in an individual but proof thereof produced at the trial showed ownership in a corporation. In the case before us for review, the indictment charged appellant with defrauding "John C. Hodges DBA A. & P. Tea Co." and in my opinion the proof (page 71 of the record) conformed therewith.

Hodges identified the check, State's Exhibit No. 1, as the one given to him by appellant and testified that it was in the same condition it was when it was given to him and that nothing had been added to it.

Appellant contends that it was error for the trial court not to provide him with counsel after his application as an indigent. The record, though reflecting appellant's request for court appointed counsel on January 4, 1966, and on August 3, 1966, also reflects a plea in abatement filed on March 30, 1965; a motion to strike the affidavit filed on August 3, 1966; a motion to quash the affidavit filed on August 3, 1966; and a demurrer filed on August 8, 1966—all of which were filed by appellant in his own behalf. The record also reflects the following quotation at the time the above motions were denied: "It is noted by the court that prior to commencement of trial and court's ruling on pleadings that defendant advised court that he is a graduate attorney."

At the beginning of the trial, out of the presence of the jury, the court, addressing appellant, stated as follows:

"The Court has discussed with the defendant on other occasions and been advised by the defendant that he is a graduate attorney himself although the court is advised that he is not licensed to practice but he is a graduate attorney."

During the course of the trial, the court addressed the following to the jury:

"THE COURT: Mr. Irvin. I might state for the record that Mr. Irvin is an attorney, a graduate—is it Tennessee, Mr. Irvin?

"MR. IRVIN: Yes, sir.

"THE COURT: But he is not a practicing attorney in this community but the court feels he is competent to try his own case and he represents himself here without benefit of counsel."

The appellant also alleges in his "Rebuttal Brief and Argument" that he holds "an L.L.B. Degree from the University of Tennessee College of Law".

The trial court ruled that appellant was, therefore, competent to defend himself, and this court contends that appellant's claim of error, that the trial court erred in not appointing him a counsel, has no merit.

Judicial notice is taken that on two prior occasions appellant has had cases on the docket of this court in which he defended himself, page 296, Docket No. 56, 8 Div. 12, and 8 Div. 14. The conclusion that may logically be drawn from this fact is that appellant had displayed knowledge and ability in conducting defenses of himself in actions prior to the one at bar.

On several occasions during the course of the trial, appellant alluded to his inexperience in Alabama trial procedure. However, at the beginning of the trial, the prosecutor stated in the record that he had aided appellant during a recess; the appellant during the course of the trial asked the court for assistance, which was done off the record, with the notation in the record, "Thereupon, there was an off the record discussion of the Bench, after which the following proceedings were had before the Court and the Jury."

During the trial the court took another recess to explain to appellant Alabama procedure relating to his attempts to introduce into evidence the question of his (appellant's) sanity, also off the record. The court further stated that at the end of the trial it would "put anything in the record that we want to, out of the presence of the jury".

From the foregoing, it may be concluded that appellant not only had assistance from the court, but was actively aided during the course of his defense by the court, thus enabling him to present an adequate defense in his own behalf.

The record reflects that appellant's educational background was as follows: attended college at Boaz for two years; attended West Point "for a short time"; graduated from the University of Tennessee Law School in 1959; taught briefly at Athens College; and it is noted that he was valedictorian of his senior class in high school. Few individuals have ever manifested an educational training so broad and versatile. It might, however, appear that appellant possessed training in "penmanship" and the criminal art of fraud and deception by the execution of negotiable instruments.

As a part of the evidence reflecting the fraudulent intent of this appellant, I point to the fact that the evidence shows that he had on former occasions employed the same modus operandi in that he had drawn two other checks, each of which bore two different dates, one in the lower lefthand corner marked "issued" and the other in the upper righthand corner. It is my opinion that it was the intention and desire of the appellant in employing the unexplained use of the two dates, to distort, confuse, and flim-flam the real truth regarding the time of issuance, and further, the use of both dates impresses me as being a part and parcel of a ruse or diabolical scheme to defraud and at the same time create in advance a technical defense thereof in the event of prosecution, at which time he would contend that said check was only a future civil promise to pay.

By "issue" Code of Alabama, 1940, Tit. 39, Sec. 2, means "the first delivery of the instrument, complete in form, to a person who takes it as a holder."

Since the evidence in the case shows that the check was actually "issued 1–27–6." and the dates thereon are in variance, I am of the opinion, because of the use of the word "issued", that the check was lawfully dated and the date thereon "1–28–65" is to be treated as surplusage. The true date was placed in the lefthand corner and I know of no law which makes a check invalid because of the location of the date. I consider this check to be properly and validly dated.

Appellant's contention that this was a "promise to pay" was not communicated to the representative of the A. & P. Co. in such a manner as to preclude difficulties and confusion. To the unexperienced, this "check" must have been, indeed, ambiguous. The Code of Alabama, 1940, Tit. 39, Sec. 21, states in part as follows:

"Where the language of the instrument is ambiguous, or there are omissions therein, the following rules of construction apply:

"(3) Where the instrument is not dated, it will be considered to be dated as of the time it was issued.

"(5) Where the instrument is so ambiguous that there is doubt whether it is a bill or note, the holder may treat it as either, at his election."

I observe from reading appellant's brief that it is his desire to be held blameless in this crime because the Board of Commissioners has ruled that he "can make application to stand the Alabama Bar next year" contingent on "good character, and improved mental and physical health". His obvious scheming, fraudulent and nefarious tactics as manifested by the evidence in this case rather indicate that he seeks a privilege or license for the practice of skullduggery, rather than a license for the practice of the time honored profession of the law.

Defendant's Exhibit B was a check issued to "Fuller's" bearing the dates 1–26–65 in the upper righthand corner and "issued 1–23–65" in the lower lefthand corner. It was not error for the State to use this check in evidence to show intent.

"Testimony, in trial for giving worthless check, that defendant gave numerous other worthless checks at about same time, held admissible to show accused's

intent at time of giving check." Nix v. State, 27 Ala.App. 94, 166 So. 716.

"It has been many times held that proof of similar transactions occurring about the time of the alleged crime are admissible as tending to prove intent. * * * [I]t was not error to overrule the objections to the various ·questions tending to prove that about the time as charged in this indictment defendant gave to other parties worthless checks in the buying of other cotton." Caughlan v. State, 22 Ala.App. 220, 114 So. 280, 283.

Appellant contends that his giving of postdated checks was an "idiosyncrasy". During the course of direct examination by the appellant of Robert Irvin, his brother, in explanation of the reasoning behind certain questions, appellant stated the following:

· "Your honor, I am trying to show that they have got two checks and I have got several other checks that's postdated that have been paid and that *that is an idio-syncrasy of the defendant to give his checks like that*." (Emphasis ours.)

Appellant then asked Robert Irvin the following:

"I ask you, Robert, if the defendant has a peculiar habit that would indicate to you that he is different from the average person? * * * And that his peculiar habit is issuing postdated checks?

\*    \*    \*    \*    \*    \*

"A. Yes, sir, he gives many postdated checks."

Appellant, testifying in his own behalf, stated the following:

"I have had this idiosyncrasy, habit of giving postdated checks."

Appellant's other claims of error have no merit in my opinion.

For the above stated reasons, I am of the opinion that no error meriting reversal has been presented. The question of guilt or innocence of the appellant was for the jury, and their verdict is not so palpably wrong or contrary to the weight of the evidence as to warrant reversal.

It appears that the writer of the majority opinion has some appreciation of portions of appellant's argument in that he has adopted for his use a prevailing adage of appellant dealing with "a fool" being the client of a lawyer who defends himself. But I do not think that an examination of the capable techniques employed by appellant, as indicated by the record, here reflects the truth of that old "proverb".

For the foregoing reasons, I must respectfully dissent from the majority opinion as I feel that this cause is due to be affirmed.