HARRIS, Judge.
Appellant was convicted of false pretense and the Court sentenced him to imprisonment in the penitentiary for a term of six years. At arraignment with Court-appointed counsel present he pleaded not guilty. After sentence was imposed, he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on appeal.
Omitting the formal parts the indictment reads as follows:
“The Grand Jury of said County Charge that, before the finding of this Indictment Larry Tate, whose name is to the *213 Grand Jury otherwise unknown, did falsely pretend to Janice Johnson, with intent to defraud that he had on deposit in a checking account upon which checks could be drawn, in Phenix Girard Bank, Phenix City, Alabama, $1210.00 and, by means of such false pretense, obtained from the said Janice Johnson, one 1970 Chevrolet Monte Carlo automobile, of the value of.- $1210.00, against the peace and dignity of the State of Alabama.”
Mr. and Mrs. Clarence Manley owned and operated the Auto Auction in Dothan, Alabama, in 1974. On October 29, 1974, appellant telephoned Mrs. Manley requesting information as to the procedures required to register automobiles for sale at the auction. Mrs. Manley informed appellant that he had to have a dealer’s license before he could enter his automobiles for sale at the auction and he had to file an application.
The next day, October 30, 1974, appellant went to the auction conducted by the Manleys and filed an application to enter some vehicles in the auction for sale. Mrs. Manley explained the auction process as follows:
“Well, when they buy cars, they buy it out — we have clerks out on the stand out there in the auction where they buy it, and they go pick up their pass-out; and that has all of the information about the car, who is selling, and who is buying and the price that they bought it at. Then they bring it in and we have a lot of typists, several in the office, along a table, and they bring their pass-out to somebody to be typed up. And we have Bills of Sale, and they bring their pass-outs to the typists and then she gets Bill of Sale and then the seller signs it at the top and the buyer signs it at the bottom, and then the kind of car and the price and everything is on there, and we type it up and they sign it.”
On October 30, 1974, Ms. Janice Johnson was employed by the Manleys as a clerk-typist. She testified that she registered the cars to be auctioned as they came in and placed a sales number on each car. After they were all registered, she returned to the office to type up the bill of sale for the automobile that brought the highest bid. She stated that when a car is sold to the highest bidder, he is given a pass-out slip that has all the information on it; the dealer’s name, when the car was sold on the auction stand, and the name of the purchaser. The purchaser then takes the pass-out slip to the office and a bill of sale is typed up from the information on the pass-out slip.
Mr. Louis Luther, a wholesale dealer, had registered a 1970 two-door Monte Carlo Chevrolet for sale at the auction. When it was placed for bidding, appellant was the highest bidder and became entitled to purchase the Monte Carlo. He was given his pass-out slip and carried it to the office and gave it to Ms. Janice Johnson and she typed the bill of sale and called Mr. Luther to come to the office and sign the bill of sale. Mr. Luther signed the bill of sale and handed the title directly to appellant. Appellant also signed the document and retained his copy and in the presence of Mr. Luther gave Ms. Johnson a check drawn on the Phenix Girard Bank, Phenix City, Alabama, in the amount of $1,210.00. Ms. Johnson took the check and clipped it to a copy of the bill of sale and placed it in a box behind the counter with other bills of sale. She did not notice that appellant had not signed the check. The copy of the bill of sale and the unsigned check were introduced in evidence over appellant’s objections.
Mr. Louis Luther testified that he lived at Fort Walton Beach, Florida and was engaged in the automobile wholesale business and was so engaged on October 30, 1974. That on that date he brought a number of cars to the Auto Auction in Dothan, Alabama, and among them was a 1970 Chevrolet, two-door Monte Carlo. He stated that appellant was the highest bidder on the *214 Monte Carlo, in the amount of $1,210.00 and he went to the office to sign the bill of sale and handed the title directly to appellant. He said when he handed appellant the title to the car, he saw a small personal check, either blue or green, in his hand.
On cross-examination he testified that he had been in the automobile business for 32 years and was familiar with the value of cars. He stated the Monte Carlo was worth $1,400.00 but he sold it for $1,210.00.
After the auction was over and Mrs. Manley was checking up, she discovered that appellant had given an unsigned check in the purchase of the Monte Carlo automobile but it was too late to call the Bank in Phenix City that day.
Mr. Carl Pickering, Vice President and Cashier of the Phenix Girard Bank of Phenix City, Alabama, testified that he had control of the records of the bank and that he had first hand knowledge of the checking account of appellant and that from September 20, 1974, to October 30, 1974, appellant did not have any money in his checking account. He stated that as a matter of fact there was an overdraft of $124.82 in this account but that it was an overdraft created by service charges on checks he had drawn against the account when there was no money in the account. It was not an actual overdraft that the bank paid out money on. He further testified that the bank closed his account because appellant kept writing checks against a depleted account in his name which caused the bank to make service charges.
Ms. Betty Tarr testified that she lived in Columbus, Georgia, and she was employed to drive cars out of Tallahassee, Florida, for McKinney Chevrolet and Mr. Louis Luther. She was in charge of a number of girls employed to drive these automobiles to auctions. She had driven cars to the Auto Auction in Dothan on past occasions. On October 30, 1974, she personally drove the 1970 Chevrolet two-door Monte Carlo that was subsequently bought at the auction by appellant. She stated she had seen appellant on two or three occasions prior to October 30, 1974, and that on that date she saw him at the auction two or three times. She said she was sitting in the dining room at the Auto Auction and looked out the window and saw appellant and his wife and another man fixing to get in the Monte Carlo and she went to the car to get some papers that she left in the car. That as she was getting into the car to get her papers, appellant was standing right next to her. She heard appellant’s wife say to him, “Larry, you didn’t sign that check you give,” and appellant said, “I didn’t intend to sign that check. I have the bill of sale and the title, so what do I care.” That after this statement was made, appellant, his wife, and the other man got in the Monte Carlo and drove away.
Appellant’s wife testified in his behalf. He did not see fit to take the witness stand. Appellant’s wife, Vickie Tate, testified that she had lived in Phenix City for about seven years and had been married to appellant for three years. That on October 30, 1974, they went to the Dothan Auto Auction and carried four cars and a motorcycle. That they went in the office and her husband asked the procedure for buying and selling automobiles and he had to fill out a registration card. She stated she did not recall the names of the people who were working in the office and specifically did not recall the name of Janice Johnson. She further testified that they went back outside to the auction ring and when a Monte Carlo came through, she asked her husband to buy it for her and he did. That after he bought the Monte Carlo, he went to the office but she didn’t go with him.
She denied telling appellant that he did not sign the check or that they had a conversation about the check or the bill of sale. She further denied that a woman came to the Monte Carlo to get any papers out of the car before she drove the car away.
*215 She further testified that a few days after they bought the Monte Carlo, a man came to her house looking for her husband and her husband was not at home. The man told her to tell her husband to contact him concerning a check. That she told her husband about this but she didn’t know what he did about it.
Appellant made a motion to exclude the check from the consideration of the jury on the ground that it was not signed and did not amount to more than a scrap of paper and that no reliance could be put on it. Appellant further moved the Court to exclude the State’s evidence because the State failed to show that pretense was involved, that the pretense was a falsity, that the defendant obtained title to the property in the indictment as a result of the falsity, and that the defendant intended to defraud Janice Johnson. Appellant further moved the Court to exclude the State’s evidence on the ground that the State failed to prove a prima facie case of false pretense. These motions were overruled.
The applicable statute under which this prosecution was had is Title 14, Section 209, Code of Alabama 1940, and provides:
“Any person, who, by false pretense or token, and with the intent to injure or defraud, obtains from another any money or other personal property, shall on conviction, be punished, as if he had stolen it.”
In Latham v. State, 56 Ala.App. 234, 320 So.2d 747, Judge Leigh Clark held:
“ ‘The crime of obtaining property by false pretenses was unknown in the early common law.’ 35 C.J.S. False Pretenses § 2. By the same authority and Section 4 thereof, we are informed that against a backround of the loosely defined crime of ‘cheating,’ the offense of obtaining property by false pretenses was ultimately the product of several English statutes, including that of 30 George II and 33 Henry VIII. The conduct involved and required does not necessitate the exertion of any physical force, actual or constructive. The actual conduct of the wrong is that of obtaining property by falsely pretending, while that of larceny consists of the taking and carrying away of property. The intent is generally the same as to both crimes, but the method of committing larceny is limited to such a method as would constitute a trespass. There is no such limitation on the method of committing the crime of obtaining property by false pretenses, which can well be by either word or deed.”
In Holloway v. State, 37 Ala.App. 96, 64 So.2d 115, this Court said:
“Generally speaking, the crime includes a false representation of an existing or past fact which deceives and which induces the person to whom the deception is made to part with something of value. The falsity of the representation must be known to the accused and it must have been made with intent to defraud.
“In other words, the offense consists of: (1) The pretense. (2). Its falsity. (3) Obtaining property by reason of the pretense. (4) Knowledge on the part of the accused of the falsity of the pretense. (5) Intent to defraud.
“In the case of Young v. State, 155 Ala. 145, 46 So. 580, 581, the Supreme Court made this observation:
‘And if a person should fraudulently represent a fact to be true, knowing at the time that it is not true, and resorts to the fraudulent representation to obtain money from another, and does so obtain it, he would be guilty of “defrauding” another by “deceitful means,” and we do not doubt he would be guilty of obtaining the money under false pretenses.’
“The case of Eaton v. State, 16 Ala.App. 405, 78 So. 321, 322, presents circumstances somewhat similar to those in the case at bar. In response to the review on appeal we held:
‘The giving of the check, if given without an explanation to the contrary, was *216 in and of itself a representation, symbol, or token that the defendant had money on deposit in the bank on which the check was drawn, and if this check was given with the intent to deceive the seller of the goods in this case, and he was thereby induced to part with the title to his property, and the symbol or token was false, and the seller was thereby deceived, the defendant was guilty. The jury by its verdict so determined, as it had the right to do, and we find no reason in the record for disturbing the judgment of conviction.’ ”
A “false pretense” may consist in any act, word, symbol, or token calculated and intended to deceive, and it may be made either expressly or by implication. Fuller v. State, 221 Miss. 247, 72 So.2d 454.
The check which appellant gave to Ms. Janice Johnson is before us as State’s Exhibit No. 2. It is a personalized check with the name and address of appellant and his telephone number printed in the left upper corner. It is dated 10-30, 1974, payable to The Auto Auction in the amount of $1210.00 and is complete in every respect sans his signature. It is a small check, blue in color, just as described by one of the State’s witnesses. When he handed this check to Ms. Janice Johnson, he represented or pretended that he had sufficient funds on deposit to cover this check in the Phenix Girard Bank. The false pretense was by deed and action and not by words. Ms. Johnson was extremely busy and she merely took the check and clipped it to her copy of the bill of sale and put it in a box with other bills of sale that she had handled in like manner. The crime was not dependent upon presentation of the check for payment. Caughlan v. State, 22 Ala.App. 220, 114 So. 280. This proffered check to Ms. Johnson in exchange for the bill of sale coupled with appellant’s statement, “I didn’t intend to sign that check. I have the bill of sale and the title, so what do I care,” made a clear case of obtaining property by false pretense and the jury was justified in finding appellant guilty as charged in the indictment.
Our holding in this case that an unsigned check made out a case of false pretense is not to be construed that the failure to sign a check will constitute a prima fa-cie case of false pretense under different facts and circumstances. All checks should bear the true signature of the maker or drawer.
To conclude otherwise we would be putting the stamp of approval on a gigantic fraud knowingly perpetrated and permit this appellant to go unwhipped of justice.
The judgment of conviction is affirmed.
AFFIRMED.
TYSON, DeCARLO and BOOKOUT, JJ., concur.