L. S. MOORE, Retired Circuit Judge.
The appellant was convicted for possessing marijuana and sentenced to five years in the penitentiary. He now appeals.
*953 James Stanley was a policeman with the City of Dothan on December 27, 1975. His testimony showed that about 5:00 P.M. that day he saw fresh car tracks going into a field under cultivation and followed the tracks to where a ear was parked. Stanley saw appellant and two other men standing at the rear of the car. As he approached, the appellant came from the rear of the car to the passenger-side, leaned into the car and came out with a plastic bag in his hand. Appellant then came back to the rear of the car and threw the bag about ten feet into a fence row. Stanley saw where it went and after telling them all to stand where they were, he went over and picked up the plastic bag. According to Stanley, he never lost sight of the plastic bag from the time he saw it in the appellant’s hand until he picked it up. Stanley then arrested the appellant for possessing marijuana. He looked into the car and saw some brown vegetable substance lying on the front seat. Stanley looked at the contents of the bag and it was greenish-brown vegetable substance which looked like the same stuff that he had seen on the car seat and was about the same color. Stanley kept the bag in his hand until he got to the police department. There he marked and tagged it as evidence and along with Officer Wendell White, sealed it in a manila envelope. He put his initials over the seal and Officer White put his initials on the envelope. They then wrote on the envelope the suspect’s name, the time and the date and that Stanley turned the envelope over to Officer White. After testifying to his experience and training in identifying drugs, which fully qualified him, Stanley stated that in his opinion the substance in the bag was marijuana and that the substance he saw on the car seat was also marijuana.
Wendell White, a Dothan policeman, testified that on December 27, 1975, he saw the plastic bag with marijuana. He received it from Jim Stanley and it was identified to him as pertaining to the case of the appellant. White examined it and put it in a brown manila envelope which he put his initials on, taped over the seals and initialed again. According to White, Officer Stanley also initialed it. The envelope was name tagged on the front with what was in it. White took the envelope to the narcotics division and locked it in a fire-proof file cabinet. He turned it over to Sgt. McCord on January 13,1976, at which time it was in the same condition as when he received it and locked it up.
On January 13, 1976, James R. McCord was a Dothan policeman and worked in the narcotics department. He testified that on that date he received an envelope from Wendell White, identified to him as pertaining to the case involving the appellant. It was a brown manila envelope with “W. W. and J. C. S.” initialed on it and had a package inside. McCord took the envelope to Enterprise and turned it over to Miss Hazel Killett, a laboratory secretary. McCord stated he did not open the envelope, and that it was in the same condition when he gave it to her as when he got it from White.
Malinda Long was employed by the State of Alabama, Department of Toxicology and Criminal Investigation at Enterprise, Ala-bamá. She testified that she analyzed drugs (and the appellant thereupon stipulated that she was an expert in that field). On January 13, 1976, she received a brown manila envelope, described to her as coming from the Dothan Police. It was “. sealed with plastic tape with the initials and a seal and initials again J. C. S. and W. W.” The package’s seal was intact. She opened the package by cutting it across the top without breaking the seal. Her analysis of the vegetable matter contained therein showed it was marijuana. She said the package contained 13.14 grams of vegetable material.
Lydia Johnson testified that she was an employee of the Houston County Circuit Clerk and as such was custodian of the circuit court records and the county court records in criminal cases which were kept in that office. According to Johnson, the State’s exhibit no. 1, was a certified copy of the judgment entry in the case of the State of Alabama v. Larry Paul Rollins, in the Houston County Court, and shows a convic *954 tion on December 18, 1975 of defendant, Larry Paul Rollins, for possession of marijuana. State’s exhibit no. 1 was admitted in evidence over appellant’s objection.
State’s exhibit no. 1, is as follows: “# 60466 The State 1 vs r PM Larry Paul Rollins J
“December 18, 1975 — Defendant pleads guilty. He is guilty as charged and the court hereby awards the following punishment: that the defendant be fined $250.00 and costs, and sentenced to hard labor for twelve months which sentence is suspended until June 17, 1976 at 9:00 a. m., upon payment of fine and costs.”
The exhibit was certified to as follows:
“I, Julia L. Trant, Clerk of the Houston County Court, hereby certify that this is a true and correct copy of Minute entry of Judgment filed in this Court on Dec. 18, 1975. This the 13 day of April, 1976.
“Julia L. Trant “Clerk of Court.”
The indictment or information or affidavit presenting the charge against the appellant in that case was not offered in evidence.
When the State rested its case the defendant moved to exclude the State’s evidence on the ground that a prima facie case had not been made. The motion was denied and overruled.
The testimony of the witnesses for the appellant was to the effect that he threw away a beer can or bottle. They said he did not throw away a plastic bag and did not have any marijuana in his possession. Appellant’s witnesses denied seeing any marijuana on the car seat and stated that the officer came to the car and talked to them. They said the officer then walked over to the bushes and came back with a plastic bag.
The appellant testified in his own behalf very much along the same line as his other witnesses. He denied getting a plastic bag out of the car and throwing it away. Appellant said he threw a beer bottle down and went to the car to get another. He denied having the plastic bag in his hand or possessing any marijuana.
During the district attorney’s cross-examination of the appellant, the record discloses the following:
“By Mr. Gruenewald:
“Q All right. Mr. Rollins, back on December 18, 1975, were you convicted in Houston County Court for possession of marijuana for your own personal use and fined?
“MR. ADAMS: And I object to that, if The Court please.
“THE COURT: Let him finish his question.
“By Mr. Gruenewald:
“Q And fined $250.00 and cost and given a twelve month jail sentence which was suspended?
“MR. ADAMS: I object to that may it please the Court. It is not a crime involving moral turpitude.
“THE COURT: This is an element of this offense and I overrule you. You can answer.
“THE WITNESS: Yes, sir. I had loaned by car out and I had been stopped — •
“THE COURT: No.
“MR. GURENEWALD: We move to strike that.
“THE COURT: Sustained. Sustained.”
The record thus discloses the defendant admitted a prior conviction for possession of marijuana. He did not admit he had an attorney or waived one. The court would not permit him to make any explanations.
The evidence on behalf of the State shows the appellant had the plastic bag containing marijuana in his hand and that he made an effort to conceal it by throwing it into the fence row as the officer approached, which is evidence of guilty knowledge. There was substantial evidence of every element of the offense. The motion to exclude the evidence was properly overruled. Stephens v. Town of Blountsville, 37 Ala.App. 219, 66 So.2d 196; Barnett v. State, Ala.Cr.App., 339 So.2d 1082 (1976).
*955 The chain of the possession of the marijuana from the time it came into the possession of Officer James Stanley until it was delivered to an employee of the laboratory at Enterprise, Alabama, was clearly shown by the evidence. The only question that could arise is its transfer from that employee to Malinda Long, the person at the laboratory who analyzed it. Long’s testimony as set out in this opinion leaves no room for doubt that it was the same manila envelope delivered to the employee of the laboratory and that it and the contents were in the “same condition” they were in when the employee got it. The envelope had not been opened and the contents had not been disturbed in any way. The evidence makes it clear that the marijuana analyzed by Long was the marijuana that Officer Stanley saw in the hand of the appellant. There is no error in the court’s ruling in this respect. The testimony of Long that it was marijuana was correctly admitted by the court.
The appellant contends that the trial court committed error in the admission into evidence of State’s exhibit no. 1, the prior conviction judgment. While that judgment does not show what he was convicted for, the jury was not mislead thereby, as the witness stated it was for a conviction for possessing marijuana. However, there was no showing that he was represented by counsel at the time he entered a plea of guilty in that case or that he waived counsel in that case.
In Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70, the court said:
“Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.”
It would clearly follow that presuming the defendant was represented by counsel from a silent record would also be impermissible.
Historically the law in Alabama has, for at least a great many years, required counsel to be appointed for indigent defendants in capital cases. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, held that counsel had to be appointed for indigent defendants in felony cases. Judge Cates, writing in Irvin v. State, 44 Ala.App. 101, 203 So.2d 283, extended the duty to appoint such counsel in serious misdemean- or cases. The duty to appoint such counsel, unless legally waived, was spoken to by the Supreme Court of the United States in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530, which further extended the duty to appoint counsel for an indigent defendant charged with a misdemeanor case. The court in Argersinger v. Hamlin, had this to say:
“[1,2] Petitioner, an indigent, was charged in Florida with carrying a concealed weapon, an offense punishable by imprisonment up to six months, a $1,000 fine, or both. The trial was to a judge, and petitioner was unrepresented by counsel. He was sentenced to serve 90 days in jail, and brought this habeas corpus action in the Florida Supreme Court, alleging that, being deprived of his right to counsel, he was unable as an indigent layman properly to raise and present to the trial court good and sufficient defenses to the charge for which he stands convicted.
“The Sixth Amendment, which in enumerated situations had been made applicable to the States by reason of the Fourteenth Amendment (see Duncan v. Louisiana, [391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491] supra; Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019; Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1; Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, [93 A.L.R.2d 733]; and In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682), provides specified standards for ‘all criminal prosecutions.’
“ ‘[It] appears that in at least twelve of the thirteen colonies the rule of the English *956 common law, in the respect now under consideration, had been definitely rejected and the right to counsel fully recognized in all criminal prosecutions, save that in one or two instances the right was limited to capital offenses or to the more serious crimes . . . Powell v. Alabama, 287 U.S. 45, 60, 64-65, 53 S.Ct. 55, 61, 77 L.Ed. 158, [166, 168] [84 A.L.R 527],
“The Sixth Amendment thus extended the right to counsel beyond its common-law dimensions. But there is nothing in the language of the Amendment, its history, or in the decisions of this Court, to indicate that it was intended to embody a retraction of the right in petty offenses wherein the common law previously did require that counsel be provided. See James v. Headley, [5 Cir.], 410 F.2d 325, 331-332, n.9.
“We reject, therefore, the premise that since prosecutions for crimes punishable by imprisonment for less than six months may be tried without a jury, they may also be tried without a lawyer.
“The assistance of counsel is often a requisite to the very existence of a fair trial. The Court in Powell v. Alabama, supra, 287 U.S., at 68-69, 53 S.Ct. at 64 [77 L.Ed. at 170] — a capital case — said:
“ ‘The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand on counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.”
“In Gideon v. Wainwright, supra (overruling Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595), we dealt with a felony trial. But we did not so limit the need of the accused for a lawyer. We said: ‘[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal' quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public’s interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him.’ 372 U.S., at 344, 83 S.Ct. at 796 [9 L.Ed.2d at 805, 93 A.L.R.2d 733],
“Both Powell and Gideon involved felonies. But their rationale has relevance to any criminal trial, where an accused is deprived of his liberty. Powell and Gideon suggest that there are certain fundamental rights applicable to all such criminal prosecutions, even those, such as In re Oliver, supra, where the penalty is 60 days’ imprisonment: “ ‘A person’s right to reasonable notice of a charge against him, and an opportunity to *957 be heard in his defense — a right to his day in court — are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.’ [emphasis supplied].
“The requirement of counsel may well be necessary for a fair trial even in a petty-offense prosecution. We are by no means convinced that legal and constitutional questions involved in a case that actually leads to imprisonment even for a brief period are any less complex than when a person can be sent off for six months or more. See, e. g., Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254; Thompson v. Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654, [80 A.L.R.2d 1355]; Shuttlesworth v. Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176.
“The trial of vagrancy cases is illustrative. While only brief sentences of imprisonment may be imposed, the cases often bristle with thorny constitutional questions. See Papachristou v. Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110.
“In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, dealt with juvenile delinquency and an offense which, if committed by an adult, would have carried a fine of $5 to $50 or imprisonment in jail for not more than two months (id., at 29, 87 S.Ct. at 1444, 18 L.Ed.2d at 547), but which when committed by a juvenile might lead to his detention in a state institution until he reached the age of 21. Id., at 36-37, 87 S.Ct., at 1448-1449 [18 L.Ed.2d at 551]. We said (id., at 36, 87 S.Ct., at 1448, 18 L.Ed.2d at 551), that ‘[t]he juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he had a defense and to prepare and submit it. The child ‘requires the guiding hand of counsel at every step in the proceedings against him,’ citing Powell v. Alabama, 287 U.S. at 69, 53 S.Ct., at 64 [77 L.Ed. at 170]. The premise of Gault is that even in prosecutions for offenses less serious than felonies, a fair trial may require the presence of a lawyer.
“Beyond the problem of trials and appeals is that of the guilty plea, a problem which looms large in misdemeanor as well as in felony cases. Counsel is needed so that the accused may not know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution.
“In addition, the volume of misdemeanor cases, far greater in number than felony prosecutions, may create an obsession for speedy dispositions, regardless of the fairness of the result. The Report by the President’s Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 128 (1967), states: ‘For example, until legislation last year increased the number of judges, the District of Columbia Court of General Sessions had four judges to process the preliminary stages of more than 1,500 felony cases, 7,500 serious misdemeanor cases, and 38,000 petty offenses and an equal number of traffic offenses per year. An inevitable consequence of volume that large is the almost total preoccupation in such a court with the movement of cases. The calendar is long, speed often is substituted for care, and casually arranged out-of-court compromise too often is substituted for adjudication. Inadequate attention tends to be given to the individual defendant, whether in protecting his rights, sifting the facts at trial, deciding the social risk he presents, or determining how to deal with him after conviction. The frequent result is futility and failure. As Dean Edward Barrett recently observed:
“ ‘Wherever the visitor looks at the system, he finds great numbers of defendants being processed by harassed and overworked officials. Police have more cases than they can investigate. Prosecutors walk into courtrooms to try simple cases as they take their initial looks at the files. Defense lawyers appear having had no more than time for hasty conversations with their clients. Judges face long calendars with the certain knowledge that their calendars tomorrow and the next day will be, if anything longer, *958 and so there is no choice but to dispose of the cases.
“ ‘Suddenly it becomes clear that for most defendants in the criminal process, there is scant regard for them as individuals. They are numbers on dockets, faceless ones to be processed and sent on their way. The gap between the theory and the reality is enormous.
“ ‘Very little such observation of the administration of criminal justice in operation is required to reach the conclusion that it suffers from basic ills.’ ”
“That picture is seen in almost every report. ‘The misdemeanor trial is characterized by insufficient and frequently irresponsible preparation on the part of the defense, the prosecution, and the court. Everything is rush, rush.’ Hellerstein, The Importance of the Misdemeanor Case on Trial and Appeal, 28, The Legal Aid Brief Case 151, 152 (1970).
“There is evidence of the prejudice which results to misdemeanor defendants from this ‘assembly-line justice.’ One study concluded that ‘[misdemeanants represented by attorneys are five times as likely to emerge from police court with all charges dismissed as are defendants who face similar charges without counsel.’ American Civil Liberties Union, Legal Counsel for Misdemeanants, Preliminary Report 1 (1970).
“[3] We must conclude, therefore, that the problems associated with misdemeanor and petty offenses often require the presence of counsel to insure the accused a fair trial. Mr. Justice POWELL suggests that these problems are raised even in situations where there is no prospect of imprisonment. Post, [407 U.S. at 48, 92 S.Ct.] at 2018 [32 L.Ed.2d at 544]. We need not consider the requirements of the Sixth Amendment as regards the right to counsel where loss of liberty is not involved, however, for here petitioner was in fact sentenced to jail. And, as we said in Baldwin v. New York, 399 U.S. [66] at 73, 90 S.Ct., at 1890, [26 L.Ed.2d 437 at 442], ‘the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or ‘petty’ matter and may well result in quite serious repercussions affecting his career and his reputation.’
“[4] We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.” [Footnotes omitted.]
We now come to a consideration of the admissibility of the minute judgment entry in the prior case of the appellant for the purpose of enhancing the punishment in the case before us. In Highsmith v. State, 55 Ala.App. 272, 314 So.2d 874, the rule is stated:
“Appellant asserts that the trial court incorrectly admitted evidence over objection and motion of the prior conviction of grand larceny due to the fact that he was not represented by counsel when he plead guilty on April 10,1950, to grand larceny. In admitting this record, the trial court committed reversible error. The Supreme Court of the United States determined in Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319, that a state may not use the record of a prior conviction to enhance the punishment in a given case without first affirmatively establishing that the accused was represented by counsel or waived counsel at the time of such prior offense.”
The said judgment entry was not admissible without proof that the appellant had an attorney or legally waived one., at the time of said conviction. No such proof appears in the record. In admitting this record the trial court committed reversible error.
Furthermore, the judgment entry does not show what the conviction was for. It merely says “as charged.” The testimony of the employee of the circuit clerk could well be hear-say as to what offense he was convicted. The charge against him, that is, the affidavit, information, or indictment in that case was not offered in evidence.
For the error noted it is ordered and adjudged by this court that the judgment of the trial c'ourt be and same is reversed *959 and the cause is remanded to the trial court for further proceedings.
The foregoing opinion was prepared by the Honorable L. S. MOORE, a retired circuit judge, serving as a judge of this Court, under the provisions of § 6.10 of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.