CHASEZ, Judge.
Verna Meyers, wife of/and Arthur Meyers and Gertrude Gardner, Inc., real estate agency, sue for a real estate commission allegedly due from the defendants-appellants, Mr. and Mrs. E. A. Davison, Jr. ■vendors of real estate to Mr. and Mrs. Monroe Marsh.
The initial question which had to be considered by the trial court and which must 'be passed on by us is: Was there an oral •agreement of agency existing between Mrs. E. A. Davison, Jr. and Mrs. Verna Meyers of Gertrude Gardner, Inc. whereby Mrs. Meyers was to locate a purchaser for the Davisons’ residence in consideration of a commission ?
The Civil District Court in deciding in favor of the plaintiffs gave written reasons for its judgment. We quote therefrom in part as follows:
“On the date of trial of this cause the Court was then of the opinion that the precise verbal agreement of the parties was for the sale of the Davison property by Mrs. Verna Meyers of the Gertrude Gardner agency, for the sum of $32,000.00 net to the Davisons.
“In the event that a purchaser was not procured by the agent to net the seller’s price, that no agreement in fact existed since netting the purchaser $32,000.00 was a condition precedent to the agent earning any commission whatsoever.
“After the court had expressed itself substantially as above, plaintiff’s counsel asked the privilege of submitting a trial brief and the court granted leave so to do to both plaintiff and defense counsel.
“Both briefs of authorities are on file herein:
“The court is still of the opinion that the verbal agreement between these parties was for the real estate agent to procure a purchase price of $32,000.00 net to the sellers.”
Beyond the trial court’s findings, the record establishes that Mrs. E. A. Davison, Jr. did authorize Mrs. Meyers to show the property and that she had given Mrs. Meyers the keys to the property to this end. The record also reflects that Mrs. Meyers introduced the Monroe Marshes to the property and showed it to them; and that she submitted offers on behalf of the Marshes to Mrs. Davison, one of which was a written offer for $31,000.00, and all of which were below $32,000.00, and were refused by Mrs. Davison.
Mr. Marsh testified that he lost interest in the house when his offers were turned down. Subsequently, within a matter of a couple of weeks Mrs. Davison got in touch with Mr. Marsh on her own behalf. A sales figure of $31,750.00 was agreed to and *548 the sale eventually transacted as a result of the direct negotiation between Mrs. Dav-ison and Mr. Marsh.
The learned Judge below reconsidered his original decision, and came to an opposite result, applying the doctrine of “procuring cause” whereby a realtor is held to be entitled to a pro-rata commission even though the sale was consummated direct between the vendor and purchaser for a lesser price than agreed upon in the listing agreement between the real estate agent and the vendor.
After carefully examining the record, we feel that the Judge below was correct in his first impression of the case. We have no quarrel with the doctrine of “procuring cause” as such, but we do not think that this is a proper case for its application. The cases of “procuring cause” cited to this Court by counsel all involve situations where there was an actual agency agreement between the parties. The doctrine of “procuring cause” protects the realtor who does the “leg work”, so to speak, in obtaining a purchaser on the strength of his agreement with the vendor, only to meet with an attempt on the part of the vendor to defeat his commission by selling at a slightly lesser figure than was stipulated in the agency agreement. The Court aborted such attempts by evolvement of this doctrine.
The testimony of Mrs. Meyers and Mrs. Davison is conflicting as to what transpired between them, but we think we can safely infer that Mrs. Meyers contacted Mrs. Davison to seek a listing of the property, which in itself has a significant bearing. The tenor of the testimony is that Mrs. Davison expressed to Mrs. Meyers that she did not want to bind or obligate herself by signing a listing agreement or other realty contracts. However, in reply to Mrs. Meyers’ importunity, she did indicate that she would be agreeable if Mrs. Meyers could produce a purchaser that would net to the Davisons $32,000.00, after commissions, to then grant a listing and have Mrs. Meyers effect this sale and earn a commission. The evidence herein shows that the finding of a $32,000.00 net purchaser was a condition precedent to the existence of any obligation on appellants to sell the property or to pay a commission. Mrs. Davison’s testimony that she told Mrs. Meyers that she would not sign a listing agreement or other agency contract unless a price sufficient to net her $32,000.00 was procured is not seriously rebutted by the testimony of Mrs. Meyers. The following excerpts from her evidence on cross-examination indicates her vagueness in this respect :
Q. “You felt that the thirty-two thousand was unreasonable, the net?
A. No.
Q. You felt—
A. I was trying to get the price that Mr. and Mrs. Davison wanted.
Q. And what was that?
A. Well, as much as she could get. She told me around thirty-four thousand, but she told me, ‘Bring me an offer.’
Q. Was the words ‘gross’ and ‘net’ ever used?
A. Yes. Possibly.
Q. What was the occasion of that ?
A. The occasion was trying — -trying to arrive at the proper figure that the house would be sold for.
Q. Did it have anything to do with a listing contract at all?
A. Well, in time you talk in terms of money, it did—
Q. It did have to do with the listing contract. Well, let me 'ask you direct: Did Mrs. Davison ever tell you she wanted to net thirty-two thousand, that she didn’t want to list *549 it unless she received thirty-two thousand ?
A. Well, even if she did, we do not drop a situation. We continue working with our clients and continue trying to get the best price.
Q. Mrs. Meyers, you’re not answering my question.”
No written contract of any kind were signed between the parties. This indicates the intent of appellants not to be bound until this condition was fulfilled.
On cross-examination Mrs. Davison was led to answer “Yes.” to questions inquiring if she had a verbal listing and this appears to have resulted from “lawyer talk” in the course of the trial whereby she concluded that the understanding she had was a listing. She, of course, could not be expected, in response to cross-examination, to distinguish between “listing” and a “conditional listing”. That this was the state of affairs is borne out by Mrs. Davison’s refusal to sign an agreement. It should also be stated that no “For Sale” signs or advertisements were shown to ever have been utilized by appellees in an effort to sell this property.
Mrs. Meyers chose to act without securing a listing, and it would be unfair of this Court to allow the doctrine of “procuring cause” to be wielded as a weapon in the hands of realtors against parties who are not attempting to take advantage of them, but who refuse to contract with them while making concessions to their persistence. Admittedly this result may be somewhat unique in the jurisprudence, but it is necessitated by the fact that there was no contract between the plaintiffs and defendants.
As the trial court indicated, no contract actually existed, since netting $32,000.00 to appellant was a condition precedent. Mrs. Davison’s acquiescence in the lesser sale for $31,750.00 does not warrant the application of the “procuring cause rationale” since appellees were not acting upon any executed agency contracts.
The judgment below is reversed and the defendants, Mr. and Mrs. E. A Davison, Jr. are dismissed from the demands of the plaintiffs, Verna Meyers, wife of and Arthur Meyers and Gertrude Gardner, Inc. The plaintiffs are to bear the costs in the Appellate and Civil District Courts.
Reversed.