GULOTTA, Judge.
A. K. Roy, Inc., a real estate brokerage firm, sued Andrew L. Roy to recover commissions allegedly due for the sale of defendant’s property. Plaintiff claimed it was the procuring cause for the sale of four groups of lots located on Grand Isle, Louisiana, and sought a total of $8,800.00 in commissions, plus attorney’s fees. The trial court concluded plaintiff was entitled to $3,800.00, including a $200.00 outstanding balance on commission owed from the September 12,1975 sale of three lots (designated here as lots A, B and C), and $3,600.00 commission for the January 12, 1976 sale of three other lots (designated here as lots D, E and F.)
By a separate judgment, the court awarded plaintiff $950.00 in attorney’s fees. Plaintiff has not appealed the court’s dismissal of his claim for $5,000.00 commission on the July 1 and October 1, 1976 sales of other lots. Defendant has appealed both the award of the $3,800.00 commission and, alternatively, the dismissal of his reconven-tional demand that he is entitled to divide the commission with plaintiff. We affirm.
Under the doctrine of procuring cause, a broker is entitled to a commission where the negotiations, which eventually lead to the sale of the property, result from some active effort by the broker. Meyers v. Davidson, 196 So.2d 546 (La.App. 4th Cir. 1967), writ refused 250 La. 746, 199 So.2d 182. There must, however, be some contract of employment, expressed or implied, between the broker and the party from whom the commission is sought. Taylor v. Martin, 109 La. 137, 33 So. 112 (La.1902). See Veters v. Krushevski, 100 So.2d 93 (La.App. 4th Cir. 1958), writ denied, April 21, 1958.
Although the trial judge made no express finding regarding a listing agreement between plaintiff and defendant, considering the evidence presented, such a finding is implicit in the determination that plaintiff is entitled to recovery under the doctrine of procuring cause.
Plaintiff is a real estate brokerage corporation whose president, Folse Roy, is the father of defendant Andrew Roy. Defendant, formerly a vice president of A. K. Roy, Inc., left the company’s employ several years before the transactions involved here, and went into business for himself. He set up his own licensed real estate brokerage, Andrew Development Corporation, although he testified at trial that he generally sells only his own property, seldom making sales for a third party.
Andrew owned several pieces of property in Grand Isle. Folse Roy testified that in late 1974 or early 1975, he had several discussions with Andrew about offering some of Andrew’s property for sale. As a result, Folse said, he agreed to clear, fill, and re-subdivide Andrew’s property, to draw up the ordinances regarding resubdivision, to advertise the property in local and out of town newspapers, to put up signs and to do everything generally necessary to obtain the best price for the property. Folse said that it was agreed that, to reimburse him for his out of pocket expenses in performing these services, he would receive a fifteen percent commission on sales. To prove that the work had been done, plaintiff presented testimony of the contractors who had cleared, filled and graded the land, and introduced into evidence bills and letters regarding labor costs, resubdivision, etc. It is undisputed that plaintiff received a fifteen percent commission on the first sale, i. e., the sale of lots A, B and C.
Andrew, on the other hand, denied that he ever discussed improving the land with his father and claimed to be unaware that *691 much of the improvement work had been done. He said he wasn’t even aware of the resubdivision of the lots until he received a carbon copy of the letter to the Grand Isle Authority requesting resubdivision. (The letter was written in Andrew’s name, but Andrew claimed that his father wrote it without asking him.) Andrew’s copy, filed into evidence, contains a blind P.S. from “dad” to Andrew. Folse, however, said at trial he did not remember writing the letter, but that if he had, it was done with Andrew’s permission.
In sum, the evidence on the listing agreement is reduced to a question of credibility — either the trial judge believed Folse Roy, or he believe Andrew. It is clear he believed Folse and we can find no manifest error in that conclusion.
Even if Andrew was unaware of his father’s efforts to improve his land at the time the improvements were made, he expressed no protest and never attempted to prevent Folse from taking further steps to handle his property. We conclude Andrew’s silence and inaction, from which his consent to an agreement is implied, afford “convincing and even conclusive evidence of such consent.” Glazer v. Abroms, 202 So.2d 290 (La.App. 4th Cir. 1967), writ refused, 203 So.2d 290.
Furthermore, there is no real dispute that plaintiff was the primary moving force in the subsequent sales of Andrew’s property (lots D, E and F) to Lee Vaccari. Andrew admitted that he had nó contact with Vaccari until the sale of lots A, B and C was consummated on September 12,1975.
Subsequent to the sale of lots A, B and C for which plaintiff received a fifteen percent commission, Folse contacted Andrew regarding resubdivision of the remainder of his property and particularly relative to the sale of lots D, E and F to Vaccari. Folse drew up, and Vaccari signed, an agreement to purchase the lots for $36,000.00. The agreement provided for a $3,800.00 commission to be paid to A. K. Roy, Inc. (including, as explained earlier, $200.00 still owed on commission on the first sale.) Folse forwarded the agreement to Andrew, who signed it but changed the commission provision to $2,000.00 to A. K. Roy, Inc. and $1,800.00 to Andrew Development Corporation, Andrew’s own brokerage company. Folse responded in an October 22, 1975 letter to Andrew in which he stated that the commission charge was contrary to their agreement, and accordingly that “there was no contract or agreement outstanding by and between Mr. Vaccari, my firm, and/or yourself.” Folse demanded the $3,800.00 commission be paid to him.[1]
Andrew later resumed negotiations with Vaccari on his own, and on January 12,1976 sold Vaccari lots D, E and F. In July and October 1976, he sold Vaccari four additional lots. It is on these sales that plaintiff claims commission.
Andrew claims that plaintiff’s letter putting to an end the agreement between them indicates plaintiff is not entitled to a commission on the subsequent sales. It is clear from the terms of the letter, however, that plaintiff simply contemplated the letter as applying to any future sales. In the letter, Folse demanded he be paid a commission for finding a willing buyer for lots D, E and F. It is clear the letter was intended to apply only prospectively. This is how the trial judge construed the letter, and it was on this basis he found plaintiff was entitled to the $3,800.00 commission, while denying commission on the latter two sales. We agree with the trial judge.
Finally, we do not agree with defendant’s contention that he is entitled to divide the $3,600.00 commission with plaintiff. Although there was testimony that it is not uncommon for a broker to divide a commission with another broker even where the second broker is also the seller of the property, such fee splitting is dependent upon prior agreement between the parties. Because we find no evidence in the record *692 supporting an agreement for a split commission, we conclude, as apparently the trial judge did, that there existed no such agreement. Furthermore, the fact that plaintiff received a full fifteen percent commission for the sale of lots A, B and C is indicative that there existed no agreement for a split of the commission on the sale of lots D, E and F.
We conclude, therefore, that Andrew’s change in the offer to purchase was clearly unauthorized and was done without any prior discussion with Folse, and well after all negotiations leading up to the sale had already been completed by plaintiff. Accordingly, we hold plaintiff is entitled to earn the entire commission on that sale.
Having so concluded, we affirm the judgment of the trial.

AFFIRMED.

. According to Folse he and Andrew agreed that Folse would receive a ten percent commission on the sale of lots D, E and F.