**SOUTHEASTERN FINANCIAL COR-PORATION, a corp., Plaintiff,**

**v.**

**John SMITH, Defendant.**

**Civ. A. No. 74-L-348-NE.**

United States District Court,
D. Alabama,
Northeastern Division.

April 28, 1975.

Phillip A. Geddes, Huntsville, Ala., for plaintiff.

Robert M. Hill, Jr., Florence, Ala., for defendant.

## MEMORANDUM OPINION

LYNNE, Senior District Judge.

### I. STATEMENT OF THE CASE.

Plaintiff, Southeastern Financial Corporation ("Southeastern"), a North Carolina corporation, instituted this action against defendant, an Alabama resident, for recovery of $13,900.54, representing the total of three worthless checks allegedly "unlawfully made, uttered, or delivered by John Smith." It also seeks $3,600.00 as a reasonable attorney's fee, and $5,000.00 punitive damages.

On June 14, 1967, plaintiff entered into a factoring agreement with Danube Carpet Mills, a Georgia corporation, by which Danube assigned its accounts receivable to Southeastern.

On November 5, 1973, Danube shipped to Carriage House Carpets, a corporation organized January 17, 1973, under the laws of Alabama, carpeting invoiced at $3,684.82. Pursuant to the factoring agreement, this account was assigned to Southeastern on November 9. In late November, Carriage House issued check number 512 to the order of Danube in the amount of the invoice. This check was signed as follows:

CARRIAGE HOUSE MOBILE HOMES, INC.

General Account

By Woody Lacy /s/
Authorized Signature

By John Smith /s/
Authorized Signature

Under the factoring agreement, the check was endorsed by Danube to Southeastern.

In like manner, Danube shipped, on November 15, 1973, carpeting invoiced at $4,252.54 to Carriage House, the account being assigned to Southeastern on November 16. Carriage House remitted check number 597, dated December 4, 1973, executed as above, in the amount of $4,252.54 to Danube. This check was endorsed over to Southeastern on December 14.

Similarly, Danube shipped carpeting on November 25, 1973, invoiced at $3,662.23, to Carriage House. This invoice too was apparently assigned to Southeastern, although the record does not show the assignment. On November 30, 1973, Danube invoiced Carriage House for an additional $2,300.95 in carpeting, assigning the account to Southeastern on the same day. On December 11, a check, number 710, signed as above, was remitted to Danube in the amount of $5,963.18, apparently covering

both invoices. This check too was presumably endorsed over to Southeastern, although the record is far from clear as to this endorsement.[1]

Each of these checks was apparently refused payment when presented to the drawee bank, the First State Bank of Phil Campbell, Alabama. The reasons for refusal are not easily discernible, although the back of the first check above is marked, in unidentified handwriting, "Drawn against uncollected funds," while the third check has stamped upon its reverse side, "ACCOUNT CLOSED."

The defendant's answer and his answers to interrogatories make it clear that he was Secretary for Carriage House from June 23, 1973, until January 1, 1974. He was also a twenty percent shareholder from June 1, 1973, to January 1, 1974, holding 20 shares of the corporate stock, representing a $10,000 contribution to capital. The other individual signer of the checks, Woody Lacy, was president of the corporation and a twenty percent shareholder during the relevant period.

The plaintiff has tendered the affidavit of Catherine Thrasher, bookkeeper of Carriage House, in which she states that she directed a "daily management report" to Mr. Smith during November and December, 1973. This report

> indicated deposits made, checks drawn, and net balance remaining in each checking account at the end of each work day. Negative balances in checking accounts were clearly shown on the report.

This statement stands undenied.

By its motion for summary judgment filed September 23, 1974, the plaintiff argues that it is entitled to judgment against Smith as a matter of law. It relies principally upon the following statute:

The holder of a worthless check, draft, or order for the payment of money shall have a right of action against the person who unlawfully made, uttered, or delivered the same to him or to his endorser. And such action may be maintained though there has been no prosecution or conviction or acquittal of the defendant for his unlawful act. Such action must be brought within one year from the date of the unlawful act. The plaintiff in such action may recover such damages, both punitive and compensatory, including a reasonable attorney fee, as the jury or court trying the case may assess.

[Tit. 7, § 131(1), *Code of Ala. 1940* (Recomp.1958) (1973 Cumulative Pocket Part)].

Plaintiff also relies on Tit. 7A, § 3–403, *Code of Ala. 1940* (1966 Added Volume), which is the UCC provision establishing by contract the liability of agents for checks drawn above their signatures.

Defendant argued at oral argument and in his brief that he is protected from liability on the checks by reason of the corporate shield, unless there was fraud on his part. He further asserts that, should his motion for summary judgment be denied, he has defenses against Danube on the obligations underlying the checks and that he should be allowed to assert these defenses against Danube's assignee and endorsee, Southeastern.

These contentions raise the following issues:[2]

1. May the plaintiff obtain judgment on the checks based upon the contractual theory that defendant's signature binds him personally?

2. May the plaintiff recover on the checks based upon the "Bad Check" statute recited above?

---

1. Plaintiff has also included an invoice for $3,656.03, dated December 10, 1973, from Danube to Carpet House. No check covering this amount has been sued upon, nor has it been explained why this invoice was included.

2. Since jurisdiction of this case is based upon diversity of citizenship, Alabama law controls the disposition of the issues raised. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938).

3. If so, what are the elements of the plaintiff's cause of action?

This Court concludes that the plaintiff cannot recover from defendant under a contractual theory of liability. He has, however, stated a cause of action under Tit. 7, § 131(1). Since that statute is construed herein to authorize recovery only upon proof of an intent to defraud, the issue of liability is inappropriate for resolution upon motions for summary judgment.

## II. DISCUSSION.

A. The plaintiff cannot recover against the defendant under a contractual theory. He is seeking to hold the defendant here to the contract of the maker of an instrument under Tit. 7A, § 3–413, *Code of Ala. 1940* (1966 Added Volume). [Hereinafter, references to the Alabama Uniform Commercial Code will be made by article and section only]. The defendant contends, however, that he signed in a representative capacity for the corporation and cannot be held as the maker.

Section 3–403 provides as follows:

§ 3–403. *Signature by authorized representative.*—(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(2) An authorized representative who signs his own name to an instrument

(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.

Plaintiff relies on 3–403(2)(b) as establishing Mr. Smith's liability. That reliance is misplaced, however, since 3–403(3) more closely reflects the facts of this case. Concededly, the signatures of Messrs. Smith and Woody are not followed by any designation of their offices, so that subsection 3 is not precisely applicable. Since 3–403(2) imposes liability on an agent only where "the instrument" fails to reveal his representative capacity, however, we are free to look at the entire instrument for evidence of the capacity of the signer. The facts that the check indicates that it is drawn against the "General Account" of the corporation and that the signatures are each preceded by the word "By" are sufficient to remove any possible confusion as to whether Smith and Woody were signing as agents of the corporation. It is improbable that anyone dealing with these checks would be led to believe that Smith and Woody were signing as joint obligors with the corporation. *Pollin v. Mindy Mfg. Co.*, 211 Pa. Super. 87, 236 A.2d 542 (1967); *Bennett v. McCain*, 125 Ga.App. 393, 188 S. E.2d 165 (1972); *see* § 1–102(1); *see also Little v. People's Bank of Mobile*, 209 Ala. 620, 622, 96 So. 763 (1923) (applying pre-Uniform Commercial Code law).

B. Plaintiff's recovery then must be under the language of the statute set out above, codified at Tit. 7, § 131(1), *Code of Alabama* 1940 (Recomp.1958) (1973 Cumulative Supplement), and enacted as Act 567 by the Alabama Legislature in 1959. 1959 *Acts* 1426.

A preliminary problem is posed by the fact that this act was codi-

fied at Tit. 39, § 53(1), after its enactment. When the Alabama Legislature adopted the Uniform Commercial Code, it purported in § 10–102 to repeal, *inter alia*, "Title 39, §§ 1–12, inclusive, § 13, as amended, §§ 14–85, inclusive, . . . ." This would seem to include the above-quoted section, except that, officially, no act of the Alabama Legislature has been codified since the adoption of the 1940 Code. Thus, all references in subsequent acts to Code provisions must be construed as applying only to the Code as it was codified in 1940, not as it might have been recompiled or recodified by the Code publisher. Thus, an act passed subsequent to the adoption of the Code of 1940 could be repealed only by specific reference to the act by number and year of adoption. That this is the understanding of the Alabama Legislature may be inferred from the repealing provision cited above, since the provision specifically repeals, in addition to the recited Code sections, a number of acts adopted subsequently to the 1940 Code. These later acts are repealed by reference to the act number and year of enactment. Therefore, it would stretch the legislature's intent to view the repeal of "§§ 14–85, inclusive," as repealing Act 567.

■ Nor can it be inferred that this act was repealed by implication. This is a disfavored method of appeal, and "[i]t is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter repealed the former." *City of Birmingham v. Southern Express Co.*, 164 Ala. 529, 538, 51 So. 159, 162 (1909). Since the UCC provides contractual remedies while the statute here provides a tort remedy, there is no reason to assume that the legislature intended to repeal the latter by adoption of the UCC.

■ This act, then, by its terms, gives to "the holder of a worthless check" a cause of action against "the person" who made the check. It in terms accrues to the holder of a check who is the endorsee of the payee, so that plaintiff in this suit has standing to invoke the statute. There are no Alabama decisions construing the statute. The only case which has involved an application of the statute, *Barrett v. Hanks*, 275 Ala. 383, 155 So.2d 339 (1963), dealt with an effort by the seller of a house to recover on two checks, drawn by the purchaser, on which payment was stopped. The court affirmed the purchaser's rescission of the contract, on the ground that the plaintiff-payee had misrepresented a material fact to the defendant-drawer, in connection with the sale of the house. By implication, the decision allows the drawer to prove defenses relating to the underlying obligation in an action by the payee on the instrument. The decision, however, does not construe the statute; indeed, the court there seems to discuss the case under the general counts of money owed rather than under the terms of the statute. Moreover, there is no discussion of the problem presented when the suit is instituted, not by the obligee-payee, but by his assignee-indorsee.

Viewing the statute as heretofore unconstrued, plaintiff strenuously argues that the statute gives him an unqualified cause of action against defendant, "dispensing with the requirement of proving intent." Plf's Mem. of Law, p. 3. This is an unacceptable construction of the act. The language quoted above was passed by the legislature along with a companion, criminal measure, Act No. 566. 1959 *Acts* 1424. The criminal provision was codified in Tit. 14, §§ 234(4)–(8). It has since been replaced, in 1971, by the Worthless Check Act, Act No. 2479. 1971 *Acts* 3958.[3]

3. Section 14 of the latter Act repealed all laws in conflict with it, and it specifically repealed "Title 14, Sections 234(4) through 234(8), *Code of Alabama*, Recompiled 1958."

Since no such official Code provisions existed at that time, the effectiveness of the specific repealer might be doubted. That issue, of course, need not be of concern here.

Thus, present § 131(1) of Tit. 7 should be construed in light of its companion measure, particularly in light of the use in § 131(1) of the term "unlawfully." This term requires content, and the most likely source from which to derive that content is in a companion statute setting forth the elements of the "unlawful" issuance of a check. *Bates v. State,* 24 Ala.App. 507, 137 So. 465, *cert. den.,* 223 Ala. 527, 137 So. 465 (1931); *State v. AAA Motor Lines, Inc.,* 275 Ala. 405, 155 So.2d 509 (1963).

A review of the criminal provision's history reveals that Act 116, 1951 *Acts* 344, repealed the former Code Provisions dealing with criminal penalties for the issuance of worthless checks, which were codified at Tit. 14, §§ 232, 233, and 234, *Code of Alabama 1940.* In place of those Code sections, Act 116 did away with "intent to defraud" in the bad check law, although the last sentence of § 2 of that Act allowed the defendant to testify as to his intent in drawing the check. Act 566, *supra,* repealed Act 116, and it restored "intent to defraud" as an element of the offense. *See Irvin v. State,* 44 Ala.App. 101, 203 So.2d 283 (1967).

A reasonable construction of the companion civil statute, then, enacted at the same time as Act 566, would encompass evidence by the defendant of his intent in issuing the check. This in turn would allow the defendant to put on evidence as to any defenses he has against the drawee which might bear on his intent in drawing the check. This construction of the civil statute makes it a true companion to the criminal statute, since the civil statute, in authorizing the recovery of punitive damages and attorney's fees, encourages "private attorneys general" to aid in policing check practices in Alabama. It would be anomalous, in these circumstances, for the civil statute to impose strict liability.

Therefore, the plaintiff must establish an intent to defraud to recover under the statute. The documents and affidavits before the Court do not conclusively settle this issue. The affidavit of Catherine Thrasher, in particular, supports an inference of fraud on defendant's part, so that there is a genuine issue of material fact, necessitating a trial under F.R.Civ.P. 56(c). *See Azalea Meats, Inc. v. Muscat,* 386 F.2d 5 (5th Cir. 1967).

An appropriate order will be separately entered.*

---

* This opinion reproduces the memorandum prepared for the Court by its law clerk, E. Mabry Rogers.